UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

Filed with Classified
Information Security Officer

CISO M. Peters

Date 6 / 12 / 12

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12-cr-00127-LMB |
| | ) | |
| JOHN KIRIAKOU, | ) | Filed in Camera and Under Seal |
| | ) | with the Classified Information |
| Defendant. | ) | Security Officer |

**MOTION TO DISMISS COUNTS
1, 2, 3 AND 4 FOR SELECTIVE AND/OR VINDICTIVE
PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY**

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, defendant John Kiriakou respectfully moves for an order dismissing counts 1 through 4 of the indictment for selective and/or vindictive prosecution. In the alternative, Mr. Kiriakou seeks an order allowing discovery into the government's decision to prosecute him.

The specific grounds for this motion are set forth in the accompanying memorandum of law.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS COUNTS 1, 2, 3 AND 4 FOR SELECTIVE AND/OR
VINDICTIVE PROSECUTION, OR IN THE ALTERNATIVE, FOR DISCOVERY**

Counts 1 through 4 of the indictment bring charges against John Kiriakou based on alleged communications with journalists involving national security information. But a review of the circumstances surrounding this case makes it clear that the acts alleged in the indictment were not the impetus for this prosecution. Rather, the indictment was brought to punish Mr. Kiriakou because he previously made two public statements that embarrassed the government. On December 10, 2007, Mr. Kiriakou gave an interview to ABC News in which he stated that the United States had engaged in torture of detainees captured in the war on terror. In 2009, Kiriakou

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

further challenged the government policy in favor of torturing terror suspects when he stated that he did not think torture was effective. Because of Kiriakou's earlier statements, which did not violate any laws, the government has seized upon the current allegations of improper disclosures to prosecute him, even though numerous other individuals that have communicated the same or similar information have not faced prosecution.

Prosecutorial decisions are given great deference. Nonetheless, when the government chooses among similarly-situated people and charges only those who have publicly spoken out against the government's position, the government engages in selective prosecution. When the government chooses to punish an individual based on animus, the government engages in vindictive prosecution. When either of those scenarios occurs, the government has exercised its prosecutorial powers impermissibly and unconstitutionally, and the indictment should be dismissed.

## FACTS

John Kiriakou has a history of speaking his mind. In December 2007, Mr. Kiriakou gave an incendiary interview to ABC News where he stated the Central Intelligence Agency (CIA) had engaged in the waterboarding of prisoners, which he said he now believed was torture. Kiriakou said that unlike the administration, he, personally, was not comfortable training in "enhanced interrogation" techniques. Kiriakou explained that each use of such techniques required the approval of the deputy director for operations of the CIA and that the White House gave the CIA permission to use these techniques. When asked if waterboarding should have been used, Kiriakou opined, "we're Americans and we're better than that." He added that he was "disappointed" that the CIA destroyed tapes of waterboarding because they were a matter of historical record within the CIA and might have "some legal import." ABC News, December 10,

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

2007.[1] Following that interview, the CIA filed a crimes report with the Department of Justice (DOJ) based on the interview, but Mr. Kiriakou was not prosecuted at that time.[2]

The context in which that interview occurred is critical to understanding why the government would be motivated to prosecute Mr. Kiriakou today. The United States was at war in Iraq and Afghanistan, as well as engaged in the global war on terror. Many of the tactics used were coming under increasing scrutiny. On July 20, 2007, President George W. Bush signed an executive order mandating that all interrogations of detainees captured in these wars comply with the Geneva Conventions' common Article 3 prohibiting torture. David Morgan, *Bush puts CIA Prisons under Geneva Conventions*, Reuters, July 20, 2007.[3] CIA Director Michael Hayden stated that any CIA detention or interrogation would meet the Geneva Conventions' requirements and not utilize torture. *Id.* But the government attempted to conceal the fact that prior to this change in policy, high-level officials were involved in the decision to use enhanced interrogation techniques. *See e.g.*, Benjamin Davis, *Endgame on Torture: Time to Call the Bluff,* Jurist, Oct. 8 2007.[4] Then John Kiriakou, a man with credibility on the subject because he was a former CIA agent who led the capture of terrorist Abu Zubaydah, told the world that the CIA did, in fact, use torture, and that the administration approved of it.

---

[1] http://abcnews.go.com/search?searchtext=kiriakou&r=video (last visited June 4, 2012).

[2] This is not the only subject on which Kiriakou has angered people at the CIA by airing his views publicly. On November 8, 2008 he published an editorial in the Los Angeles Times where he discussed Bolivia's close political ties with Iran. John Kiriakou, *Iran's Latin America Push*, Los Angeles Times, November 8, 2008, http://www.latimes.com/news/opinion/la-oe-kiriakou8-2008nov08,0,878526.story. Kiriakou's wife, Heather, was accused of passing him classified information for use in the article, an accusation that was later found to be baseless.

[3] http://www.reuters.com/article/2007/07/20/us-security-interrogations-idUSN2029519720070720.

[4] http://www.jurist.law.pitt.edu/forum/2007/10/endgame-on-torture-time-to-call-bluff.php.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Kiriakou's discussion of waterboarding exacerbated an already contentious debate regarding those tactics. Brian Stetler, *How '07 ABC Interview Tilted a Torture Debate*, New York Times, April 28, 2009.[5] Foreign Policy opined that Kiriakou's admissions had "electrified the hand-wringing national debate on torture" in 2007. Jeff Stein, *CIA Man Retracts Claim on Waterboarding*, Foreign Policy, January 26, 2010.[6] And the CIA was furious that Kiriakou would willingly discuss torture publicly. Annie Lowrey, *John Kiriakou: CIA Media Plant*, Foreign Policy Blog, April 28, 2009.[7] At the time, Mr. Kiriakou believed that Abu Zubaydah was waterboarded once for 30 to 35 seconds, and that it had worked to produce useful information. Later, Kiriakou learned that Zubaydah was actually waterboarded over 80 times in the first month. In his 2009 memoir, *The Reluctant Spy*, Kiriakou opined that waterboarding – which he had already decried as un-American – was also ineffective. John Kiriakou, *The Reluctant Spy: My Secret Life in the CIA's War on Terror* 191 (Skyhorse Publishing 2012; originally published in 2009).

After Mr. Kiriakou left the CIA he went to work for Senator John Kerry on the Senate Foreign Relations Committee, where his work did not endear him to the administration. During his employment, Mr. Kiriakou investigated the threat posed by terrorist cells in Yemen, Somalia, Ethiopia and Djibouti. He authored a report that exposed, among other issues, the danger these countries continued to pose to the United States despite the intelligence community's best efforts to contain them, and United States citizens who became terrorists. Sen. Comm. On Foreign

---

[5] http://www.nytimes.com/2009/04/28/business/media/28abc.html?pagewanted=all.

[6] http://www.foreignpolicy.com/articles/2010/01/26/cia_man_retracts_claim_on_waterboarding

[7] http://blog.foreignpolicy.com/posts/2009/04/28/john_kiriakou_cia_media_plant.

Relations, 111 Cong., Al Qaeda In Yemen and Somalia: A Ticking Time Bomb (Comm. Print 2010).

Mr. Kiriakou is nominally being charged for leaking the names of a covert operative to the press and connecting particular individuals to allegedly classified programs, but other individuals who engaged in the same conduct have not been prosecuted. For example, in August of 2011 the New Yorker published an article about the raid that killed Osama Bin Laden. In that article, author Nicholas Schmidle stated that he knew the identities of the Seal Team which executed the operation. "The commander of DEVGRU's [Naval Special Warfare Development Group] Red Squadron, whom I'll call James, sat on the floor, squeezed among ten other SEALS ... (The names of all the covert operators mentioned in this story have been changed.)" Nicholas Schmidle, *Getting Bin Laden*, The New Yorker, August 8, 2011 at 1.[8] The high level of detail in the published article indicates that Schmidle had received substantial disclosures from government officials with knowledge of the classified raid. In the article, Schmidle connects undercover agents, DEVGRU's Red Squadron and local operatives to the operation which killed Bin Laden. Yet to the defense's knowledge, no one has been prosecuted for disclosing information to Schmidle.

Similarly, on March 24, 2012, Greg Miller of the Washington Post published an article profiling the director of the CIA's Counterterrorist Center, or CTC, who the paper called "Roger." Greg Miller, *At CIA, a convert to Islam leads the terrorism hunt*, Washington Post, Mar. 24, 2012.[9] The CTC director's real name is not public knowledge. *Id*. According to the

---

[8] http://www.newyorker.com/reporting/2011/08/08/110808fa_fact_schmidle.

[9] http://www.washingtonpost.com/world/national-security/at-cia-a-convert-to-islam-leads-the-terrorism-hunt/2012/03/23/gIQA2mSqYS_story.html.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

article, Miller could not publish "Roger's" real name because, as director of the CTC, "Roger" is *undercover*. *Id.* at 1-2 (emphasis added). The article cites numerous CIA and Federal Bureau of Investigation (FBI) sources who discuss the role of the CTC, connect "Roger" to the CTC and reveal details regarding the program. To the defense's knowledge, no one who works at the CIA, FBI or Washington Post is facing criminal charges for revealing the name of a covert agent, or revealing that agent as "the principle architect of the CIA's drone program." *Id.* at 1.

On May 3, 2012, Peter Bergen, the Cable News Network (CNN)'s terrorism consultant, appeared on Comedy Central's The Daily Show. He was promoting his new book, *Manhunt-the 10 Year Search for Bin Laden-from 9/11 to Abbotobad*.[10] On the program Bergen told host Jon Stewart about the high-level sources in the CIA, Department of Defense (DOD) and White House from whom he gathered information for his book. To the defense's knowledge, no official in any agency has faced prosecution for revealing classified information to Bergen. And the reason these individuals are avoiding prosecution is not because they remain anonymous; well-placed White House employees, whose identities are a matter of public record, are providing names to members of the press. *See* Jim Miklaszewski and Courtney Kube, *Obama aides gave classified information on bin Laden raid for film, watchdog says*, MSNBC, May 22, 2012.[11].

---

[10]    http://www.thedailyshow.com/watch/thu-may-3-2012/peter-bergen (last visited June 12, 2012).

[11]    http://usnews.msnbc.msn.com/_news/2012/05/22/11816421-obama-aides-gave-classified-information-on-bin-laden-raid-for-film-watchdog-says.

A collection of documents, including emails and transcripts detailing the leaks, is available at http://www.judicialwatch.org/press-room/press-releases/13421/?utm_source (last visited June 8, 2012).

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Moreover, officials inside the CIA leaked information to the Associated Press regarding the cooperation of a Yemeni national with government intelligence officials, cooperation that was used to foil a plot to blow up an airliner. *See* Eileen Sullivan, Matt Apuzzo and Adam Goldman, *Al Qaeda Bomb Plot: Would Be Bomber Was CIA Informant*, Huffington Post, May 8, 2012.[12]

On June 1, 2012 the New York Times published an article detailing the how the United States used cyber attacks to disrupt Iranian nuclear activity. David E. Sanger, *Obama Order Sped Up Wave of Cyberattacks Against Iran*, New York Times, June 1, 2012.[13] The article quotes sources who were inside the White House Situation Room during meetings discussing the program, none of whom currently face prosecution. Seizing on the article, Senator John McCain made a floor statement decrying the fact that low level individuals were being prosecuted for leaking classified information while high level administration sources avoided legal consequences. "The fact that this Administration would aggressively pursue leaks perpetrated by a 22-year old Army Private in the 'Wikileaks' matter and former CIA employees in other leaks cases but apparently sanction leaks made by senior Administration officials for political purposes is simply unacceptable." Senator John McCain, Floor Statement, June 5, 2012.[14]

The one common element among these unprosecuted leaks is that they portray the government in an excellent light. Contrast this with the information offered by Kiriakou in his

---

[12]     http://www.huffingtonpost.com/2012/05/08/al-qaeda-bomb-plot-bomber-cia-informant_n_1501340.html.

[13]     http://www.nytimes.com/2012/06/01/world/middleeast/obama-ordered-wave-of-cyberattacks-against-iran.html.

[14]     http://www.mccain.senate.gov/public/index.cfm?FuseAction=PressOffice.Floor Statements&ContentRecord_id=be7ddc4b-eb7b-51c6-d44e-34a35bdfd719 (last visited June 6, 2012).

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

2007 interview, which contradicted the narrative that the United States did not engage in the torture of prisoners, his even more embarrassing statement in 2009 that waterboarding was not even effective, and his work investigating the intelligence coverage of a volatile region of the world for the Senate Foreign Relations Committee. The only logical conclusion to be drawn from these facts is that the government has tolerated other disclosures because they resulted in press favorable to the government. But when Kiriakou allegedly made illegal disclosures of exactly the same nature, government officials found a reason to punish him for his past candor.[15]

## ARGUMENT

### A. John Kiriakou has been selected for prosecution because he has spoken to the media in a manner offensive to the government.

The doctrine of selective prosecution protects an individual from the arbitrary exercise of prosecutorial discretion and the resulting violation of due process. *See United States v. Armstrong*, 517 U.S. 456, 464-65 (1996). A prosecution is improperly selective if it has a discriminatory effect and is initiated for a discriminatory purpose – that is, if similarly situated individuals are not prosecuted and the decision to prosecute is invidious or made in bad faith. *United States v. Olvis*, 97 F.3d 739, 743 (4th Cir. 1996). The present prosecution satisfies both elements: the government did not prosecute individuals who made the same sort of disclosures as

---

[15]    Mr. Kiriakou is not the only individual to face prosecution for leaking statements to the press. However, the information provided by others who have been prosecuted is also critical of the government, or embarrasses the government in some way. *See e.g., United States v. Drake*, No. 1:10-cr-181-RDB (D. Md. filed April, 14 2010); *United States v. Sterling*, No. 1:1-cr-485-LMB (E.D. Va. filed Dec. 22, 2010).

A comparison of recent leaks that resulted in prosecution and leaks that did not can be found in a recent article in Foreign Policy. Uri Friedman, *Good Leak, Bad Leak*, Foreign Policy, June 8, 2012, http://www.foreignpolicy.com/articles/2012/06/07/good_leak_bad_leak.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Kiriakou is alleged to have made, and the prosecution was designed to punish Kiriakou for the embarrassing content of his prior statements.

A prosecution is invalid if the government selects certain defendants to charge, out of a group of similarly situated individuals, based on their exercise of constitutional rights. "[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *Olvis*, 97 F.3d at 744. The only difference between those who have escaped prosecution and John Kiriakou is that the others leaked classified information with the tacit support of the United States government, or revealed information the government considered favorable. Those leaks paint the United States in a manner that glorifies the exploits of its agents. They focus the public on the heroes who keep this country safe. In order to tell those positive stories, the government appears willing to allow sources to reveal classified information, including the names of covert operatives. But John Kiriakou told a less flattering story. He went on national television and told the world that the United States used "enhanced interrogation" techniques and that in his opinion, waterboarding was torture and that America was better than that. Later, in 2009, he published a memoir where he stated that waterboarding was ineffective. This is the type of story that the government wanted to make sure its agents never revealed. The United States is prosecuting Mr. Kiriakou because he expressed views which are not popular with the government. That it may not do.

"An enforcement procedure that focuses upon the vocal offender is inherently suspect, since it is vulnerable to the charge that those chosen for prosecution are being punished for their expression of ideas, a constitutionally protected right." *United States v. Steele*, 461 F.2d 1148, 1152 (9th Cir. 1972). In *Steele*, a conviction for failure to answer a census question was

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

overturned because the government prosecuted only those who were involved in a census protest movement. *Id.* at 1151-52. In *United States v. Crowthers*, 456 F.2d 1074 (4th Cir. 1972) convictions for violating disorderly conduct statutes were overturned because only those who were protesting against the government were charged. These cases stand for the proposition that it is not permissible for the government to selectively charge individuals with a crime based on an exercise of their First Amendment rights:

> For officials of the United States government to selectively and discriminatorily enforce [the regulation at issue] so as to turn it into a scheme whereby activities protected by the First Amendment are allowed or prohibited based on the uncontrolled discretion of these officials violates the equal protection of the laws embraced within the due process clause of the Fifth Amendment.

*Crowthers*, 456 F.2d. at 1080. When the government chose to prosecute Mr. Kiriakou it did so because he had publicly exercised his First Amendment rights in 2007 and again in 2009; he epitomizes a "vocal offender."

Even if the actions alleged in the indictment were illegal, choosing to punish Mr. Kiriakou in an effort to quell undesirable speech and deter those with knowledge of the government intelligence programs from speaking to the press would run afoul of the Constitution. In *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), the court held that an individual guilty of not possessing a valid selective service registration card must have his conviction overturned if, following a remand, the district court determined the reason the law was enforced against him was to punish him for being a conscientious objector to the Vietnam War. *Id.* at 623. The Seventh Circuit's decision in *Falk* followed the logic of the D.C. Circuit in *Dixon v. District of Columbia*, 394 F.2d 966 (D.C. Cir. 1968). In *Dixon*, the District of Columbia prosecuted a traffic offender who had filed a grievance related to police misconduct. *Id.* at 968 ("[T]he government employs an impermissible classification system when it punished those who

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

complain against police misconduct and excuses those who do not.") In both of these cases, the courts held that even if the conduct was nominally illegal, selecting only certain individuals for prosecution is not a valid exercise of prosecutorial power. "Punishment of Falk, however valid otherwise, only because he chose to assert his right as a contentious objector, is very similar to the conduct of city officials who reinstated traffic violations following the defendant's action in filing an official complaint charging police misconduct in *Dixon v. District of Columbia*, 394 F.2d 966, 968 (1968)." *Falk*, 479 F.2d at 623.[16]

By bringing criminal charges against Mr. Kiriakou, and not any of the other similarly situated individuals, the government has engaged in precisely the type of selective prosecution that is forbidden by the due process clause.

## B.  The Prosecution of Mr. Kiriakou is Vindictive.

The vindictive prosecution doctrine forbids the prosecution of defendants for exercising their constitutional rights. "To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.'" *United States v. Goodwin*, 457 U.S. 368, 372 (1982) (quoting *Brodenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). When objective evidence shows that "(1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus," the defendant has established vindictive prosecution. *United States v. Wilson*, 262 F.3d 305, 314 (4th Cir. 2001).

---

[16]     *But cf. United States v. Lindh*, 212 F. Supp.2d. 541 (E.D.Va 2002). In *Lindh*, the defendant claimed that he was selectively prosecuted because he had associated with the Taliban for religious reasons, and that the prosecution was being brought in violation of his First Amendment rights. The court held that Lindh could not prove that people outside his protected class were avoiding prosecution. *Id.* at 564-69. In contrast, the available evidence regarding persons who disclosed information about CIA activities demonstrates that those whose views are in line with the government's position have *not* been prosecuted.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

A survey of press coverage following Kiriakou's 2007 and 2009 statements provides objective evidence of animus. Of all the stories regarding classified information and covert operatives recently published, the defense is aware of none that resulted in the prosecution of the individual who spoke to the media. Even if the acts alleged in the indictment constitute prosecutable crimes – which Mr. Kiriakou does not concede – the government's decision to bring this case, while not prosecuting others who leaked classified information in support of the government's actions, demonstrates that the government is motivated by its dislike of the *contents* of Mr. Kiriakou's public statements. The government is attempting to prosecute Mr. Kiriakou now as the result of his earlier exercise of his First Amendment rights. "It is now well established that a prosecutor violates the Due Process Clause of the Fifth Amendment by exacting a price for a defendant's exercise of a clearly established right or by punishing the defendant for doing what the law plainly entitles him to do." *Wilson*, 262 F.3d. at 314.

Moreover, all the available evidence indicates that this animus toward Mr. Kiriakou is the reason he faces prosecution. If Mr. Kiriakou had gone to the press with stories the administration approved of, the government's consistent treatment of similar cases indicates no prosecution would have followed. When White House aides leaked stories about the heroes who killed Osama Bin Laden, they were not prosecuted. When the Washington Post was granted access to the covert director of the CTC for a profile of those directing America's "war on terror," no one was prosecuted. But when John Kiriakou gave an interview where he admitted the United States used waterboarding and when he further opined that waterboarding was ineffective, the

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

government went after him.[17]   Accordingly, counts 1 through 4 of the indictment should be dismissed on the grounds of vindictive prosecution.

### C.   In the alternative, Mr. Kiriakou has demonstrated the need for discovery into the government's motivations for prosecuting him now.

Mr. Kiriakou believes the public record sufficiently demonstrates that the United States has improperly selected him for prosecution based on his exercise of his constitutional rights and on the animus the United States holds toward him, warranting the dismissal of counts 1 through 4 of the indictment. However, should this Court hold otherwise, Mr. Kiriakou requests an order permitting discovery into the government's decision to charge him with the crimes alleged in the indictment. Mr. Kiriakou does not need to establish that a constitutional violation occurred to be entitled to discovery on his claims of selective and vindictive prosecution. Instead, a defendant need only show some evidence of the existence of the essential elements of the defense. *Armstrong*, 517 U.S. at 468.[18] The facts of this case should at least entitle Mr. Kiriakou to such discovery.

In *United States v. Falk*, 479 F.2d 616 (7th Cir. 1973), the court found that a combination of a published government policy of not prosecuting violators of draft card regulations, Falk's outspoken dissent regarding United States policy and the Vietnam war, the length of time preceding the charging decision, and statements by Justice Department officials questioning the

---

[17]   *Cf. United States v. Bourque*, 541 F.2d 290, 293 (1st Cir. 1976) (finding that animus on the part of the prosecutor would be grounds to dismiss for discriminatory prosecution but that the type of actions defendant committed frequently resulted in the prosecution so there was no claim for vindictive prosecution).

[18]   The standard for obtaining discovery is the same for selective and vindictive prosecution claims. *Wilson*, 262 F.3d at 315-16.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

proprietary of Falk's prosecution, warranted an evidentiary hearing into the reasons Falk was prosecuted for draft card violations. *Id.* at 623-24.

In the present case, Mr. Kiriakou is an individual who has discussed policy and practices the United States finds embarrassing. While not published, it appears that there is a de facto policy of not prosecuting those who reveal classified information, as long as the information is favorable to the government. Mr. Kirikou has been under investigation since at least 2008, but was not charged until 2012. Finally, it should be noted, Mr. Kiriakou is one of the very few people to face prosecution under 50 U.S.C. § 421, the statute charged in count 1 of the indictment, despite the number of people for whom such a charge would seem appropriate. Given the nature of the public record, the government is not entitled to a presumption that it is acting in good faith. The fact that so many others have leaked similar information but have not been prosecuted casts enough doubt on the government's motives to require discovery.

WHEREFORE, Defendant John Kiriakou, respectfully submits that this motion to dismiss counts 1, 2, 3, and 4 of the indictment, or in the alternative, for an order granting discovery into the motives for prosecution, should be granted.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

**UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE**

Respectfully submitted,

/s/ Plato Cacheris

Plato Cacheris
(Va. Bar No. 04603)
pcacheris@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax: (202) 464-3319

/s/ John F. Hundley

John Francis Hundley
(Va. Bar No. 36166)
jhundley@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax: (202) 464-3319

/s/ Robert P. Trout

Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax: (202) 464-3319

/s/ Jesse I. Winograd

Jesse I. Winograd
(Va. Bar No. 79778)
jwinograd@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax: (202) 464-3319

/s/ Mark J. MacDougall

Mark J. MacDougall
(Admitted *Pro Hac Vice*)
mmacdougall@akingump.com
Attorney for John Kiriakou
AKIN GUMP STRAUSS
    HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 887-4510
Fax: (202) 887-4288

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

## Certificate of Service

I hereby certify that on this 12th day of June, 2012, I filed the foregoing by hand, with the Classified Information Security Officer, pursuant to the Protective Order for Classified Information entered in this case. Pursuant to the Protective Order, the Classified Information Security Officer will make arrangements to deliver the foregoing to the Court and to counsel for the United States:

Lisa L. Owings
Lisa.owings@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

Ryan P. Fayhee
ryan.fayhee@usdoj.gov
U.S. Department of Justice
Trial Attorney, Counterespionage Section
600 E Street, N.W.
Washington, D.C. 20004

Iris Lan
Iris.lan@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

Mark E. Schneider
Mark.schneider@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

/s/ Jesse I. Winograd

Jesse I. Winograd, (Va. Bar No. 79778)
jwinograd@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE