Case 1:12-cr-00127-LMB   Document 56   Filed 07/19/12   Page 1 of 20 PageID# 312

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Filed with Classified
Information Security Officer
CISO Mpeters
Date 7/13/2012

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal No. 1:12-cr-00127-LMB |
| | ) | |
| JOHN KIRIAKOU, | ) | Filed In Camera and Under Seal |
| | ) | with the Classified Information |
| Defendant. | ) | Security Officer |

## CONSOLIDATED REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR A BILL OF PARTICULARS AND TWO MOTIONS TO DISMISS

John Kiriakou, through undersigned counsel, respectfully submits this Consolidated Reply in support of his Motion for a Bill of Particulars, his Motion to Dismiss Counts One, Two, Three and Four of the Indictment for Selective and/or Vindictive Prosecution, or, in the Alternative, for Discovery ("Selective/Vindictive Prosecution Motion"), and his Motion to Dismiss Counts One, Two, Three and Four of the Indictment for Vagueness and Overbreadth ("Vagueness/Overbreadth Motion").

### A. The Motion for a Bill of Particulars Should be Granted.

Defendant's Motion for a Bill of Particulars requests that the government provide particulars regarding three specific facets of the Indictment: (1) the factual basis for its assertion that Covert Officer A was in fact "covert" within the meaning of 50 U.S.C. § 426(4); (2) the "affirmative measures" taken by the United States to conceal Covert Officer A's intelligence relationship with the United States, as required by 50 U.S.C. § 421(a); and (3) the injury to the United States or its national security, and/or the advantage to any foreign nation, that the defendant would have had reason to believe would arise from the disclosures at issue in Counts Two, Three, and Four, as required by 18 U.S.C. § 793(d). In each of these three respects,

JNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

"essential detail[s] . . . have been omitted from the indictment," impeding Mr. Kiriakou's ability to prepare for trial unless particulars are provided. *United States v. Anderson*, 481 F.2d 685, 690 (4th Cir. 1973).

In an effort to deflect attention from these specific shortcomings in the Indictment, the government's opposition first emphasizes the Indictment's level of detail regarding the allegedly illegal disclosures made by defendant. But those allegations are irrelevant to the requested particularization. The problem addressed by defendant's motion is not that the Indictment fails to identify the allegedly illegal disclosures; the problem is that the Indictment fails to identify: (1) the basis for the assertion that Covert Officer A was "covert"; (2) the "affirmative measures" taken to conceal Covert Officer A's status; and (3) an injury to the United States or advantage to a foreign nation that Mr. Kiriakou could have expected to arise from the alleged disclosures. The fact that the Indictment includes quotations from a number of emails allegedly written by the defendant does not cure these specific deficiencies that Mr. Kiriakou has raised as to Counts One, Two, Three, and Four.

Regarding Mr. Kiriakou's request for particulars concerning the "covert" status of Covert Officer A and the "affirmative measures" taken to conceal that intelligence relationship with the United States, the government contends simply that the Indictment is sufficient because it states that Covert Officer A's "association with the CIA has been classified for more than two decades." [Consolidated Response in Opposition to Defendant's Motion for a Bill of Particulars and Two Motions to Dismiss ("Consolidated Opposition") at 7.] But that is not enough. Section 426(4) of Title 50 of the U.S. Code defines three classes of "covert" agents. Each of those three definitions includes classification of the agent's intelligence relationship with the United States as just one element among several that the government must prove in order to establish that the agent in

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

question is in fact "covert" within the meaning of the statute. For example, in order to establish that an agent is "covert" within the meaning of Section 426(4)(A), the government must prove not only that the agent's intelligence relationship with the United States was classified, but also that the agent is "a present or retired officer or employee of an intelligence agency . . . who is serving outside the United States or has within the last five years served outside the United States." 50 U.S.C. § 426(4)(A). By asserting that Covert Officer A's association with the CIA was classified, the Indictment addresses only one of the essential statutory elements and fails to apprise Mr. Kiriakou of key facts establishing the basis for the government's assertion that Covert Officer A was in fact "covert" within the meaning of the statute.

The same goes for the Indictment's failure to particularize the "affirmative measures" that the government took to conceal Covert Officer A's identity. As with the definition of "covert," the fact that the information in question was classified is only one element of the offense that Congress defined in Section 421(a). In addition to proving that the information in question was classified, the government must *separately* prove that "the United States [wa]s taking affirmative measures to conceal such covert agent's intelligence relationship to the United States." *See* S. Rep. 97-201 (1981), *reprinted in* 1982 U.S.C.C.A.N. 145, 159 (government must prove that it took affirmative measures to conceal identity "in addition" to proving that information was classified). The "classification" and "affirmative measures" requirements are distinct statutory elements, and the fact that the Indictment adequately alleges classification does not address the failure to specify the "affirmative measures" that were taken to conceal Covert Officer A's identity. The government's suggestion that Mr. Kiriakou "can reasonably anticipate" various "other examples" of methods of concealing Covert Officer A's identity simply highlights the problem. (Consolidated Opposition at 7) (citing S. Rep. No. 97-201 (1981)). The multitude of

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

possibilities is exactly why Mr. Kiriakou has requested particularization; he has not been put on adequate notice such that he has a fair opportunity to prepare for trial. *See United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973).

Regarding defendant's request for particularization of Counts Two, Three, and Four as to the injury to the United States or its national security that Mr. Kiriakou had reason to believe would arise from the disclosures alleged therein, the government hinges its opposition upon language in non-disclosure agreements purportedly signed by Mr. Kiriakou. (Consolidated Opposition at 8.) The defense takes issue with the government's apparent contention that general non-disclosure agreements signed in the past can conclusively establish any element of the specific crimes with which a defendant is charged. But even assuming that these agreements show that Mr. Kiriakou generally understood that the disclosure of classified information could potentially harm the national interest, the Indictment still does not provide notice of the injury that Mr. Kiriakou had reason to believe would result from the specific disclosures alleged here. A person's general awareness that injury *could* occur in certain instances as a result of disclosing classified information does not mean that the individual possessed the requisite belief in a particular instance that injury would result from the disclosure of specific information. There is no shortage of imaginable circumstances in which a person could conclude, reasonably and in good faith, that the disclosure of classified information is necessary in order to *protect*, rather than harm, the national interest; as well as circumstances where the disclosure of classified information would do no harm. Thus, the government has not provided adequate notice regarding this essential element of the alleged § 793(d) offenses and additional information is necessary for Mr. Kiriakou to prepare his defense.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Finally, the government contends that a Bill of Particulars is unnecessary because it will be producing various documents in classified discovery that provide all of the requested information. While it is true that an indictment that fails to provide sufficient information for a defendant to prepare for trial may be remedied by discovery, *see United States v. Cuong Gia Le*, 310 F. Supp.2d 763, 772-73 (E.D. Va. 2004), the government has not provided such discovery in this case. On May 25, 2012, Mr. Kiriakou served the government with a letter requesting material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963).[1] This letter included specific requests regarding Covert Officer A's covert status and Mr. Kiriakou's personnel file. Mr. Kiriakou's counsel has reviewed the classified discovery materials provided to date, and to counsel's knowledge at this time, materials addressing the issues raised in the Motion for a Bill of Particulars have not been provided.[2] While discovery may be an alternative method for providing necessary detail, it has not been fruitful thus far. Allowing the government to sidestep timely disclosure of the requested, necessary information, under the guise that such information will eventually materialize during the discovery process would deny Mr. Kiriakou a fair opportunity to prepare his defense. *See United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996) (the purpose of a bill of particulars is to provide missing or additional information for effective trial preparation). In order to prevent such a possibility, Mr. Kiriakou respectfully moves for the requested Bill of Particulars.

---

[1]     Section III of the Discovery Order entered by the Court on April 13, 2012, orders the government to "comply with its obligations to produce promptly exculpatory material as required by Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976)."

[2]     There is a significant amount of material which counsel has been unable to view due to ongoing password problems in the SCIF. The government has worked with defense counsel to remedy that problem, but none of the discovery the defense has been able to review to date relates to the information requested in the motion for a bill of particulars.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

**B.      The Motion to Dismiss for Vindictive and/or Selective Prosecution Should be Granted.**

**1.      Defendant was singled out for prosecution on the basis of prior statements critical of the government.**

To show that this prosecution is impermissibly selective, defendant does not have to demonstrate that the government can offer no reason for bringing it. Instead, he need only show that there are no distinguishable prosecutorial factors that justify making different prosecutorial decisions with respect to similarly situated defendants. *See United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996).

The government argues that the emails allegedly written by defendant and cited in the Indictment are a factor that distinguishes this case from other disclosures of classified information. But in this day and age, it is highly unlikely that other leak cases did not involve communications by email or other recoverable media. While the government also asserts that the defense has failed to acknowledge "the defendant's lack of candor" (Consolidated Opposition at 14), it does not claim to have confronted other individuals who have disclosed classified information and chosen not to prosecute them as a result of their candor.

According to the government, the investigation into Mr. Kiriakou began because Covert Officer A was identified in a filing made by defense attorneys representing an individual held in the government's detention facility in Guantanamo Bay, Cuba ("Guantanamo filing"). The government does not explain why it was not equally motivated to investigate the disclosures of other classified information made in the various publications defendant cites in his motion to dismiss. The information provided by those sources was similarly available to only a limited number of people who should be readily identifiable to the government, yet the government has chosen not to prosecute those individuals. Moreover, the Guantanamo filing contained classified

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

names in addition to Covert Officer A's. The defendant has not been charged with these disclosures, so presumably that information came from similarly situated individuals who have not been prosecuted.

The government appears to misinterpret Kiriakou's argument about the impetus for this prosecution. (*See* Consolidated Opposition at 14-15.) The fact that defendant was not prosecuted for his prior statements regarding waterboarding does not undermine defendant's motion. What the defense argues is that at a time when many people were leaking information to the press about covert agents and intelligence activities in the war on terror, Mr. Kiriakou is one of the few people being prosecuted for such leaks; and the reason the defendant was selected for prosecution was his prior public statements, including those in the 2007 interview and his book, that put the government and the CIA in an extremely bad light.[3]

In addition to his interview and book, Mr. Kiriakou asserts that his work for Senator Kerry and the Senate Foreign Relations Committee was an additional source of animus toward him on the part of the CIA. The government labels this assertion "bizarre" and "frivolous." (Consolidated Opposition at 15 n.3.) But in the report that he prepared for Senator Kerry (Sen. Comm. On Foreign Relations, 111 Cong., Al Qaeda In Yemen and Somalia: A Ticking Time Bomb (Comm. Print 2010)), Mr. Kiriakou raised serious allegations of failures on the part of the intelligence services:

---

[3]    As set forth in defendant's original motion, while several other individuals have also faced prosecution for leaking statements to the press, the information they provided was also critical of or embarrassing to the government. (Selective/Vindictive Prosecution Motion at 8 n.15.)

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

- he stated that Al Qaeda was not on the run (p. 4), and described how dozens of American citizens had traveled to Yemen for terrorist training and had "dropped off the radar" of law enforcement, *id.* at 9;

- he stated that there was little the United States could do to weaken Islamic terrorist groups in Somalia, *id.* at 16;

- he concluded that "the failed Christmas Day bomb plot demonstrated what can happen when U.S. government agencies fail to act on or disseminate information quickly and efficiently." *Id.* at 17.

Like his statements to the press in the ABC News interview and what he wrote in his memoir, the available evidence indicates that these embarrassing revelations about the intelligence community are part of what motivated the government to pursue the current charges against Mr. Kiriakou.

The government's opposition does not sufficiently distinguish Mr. Kiriakou's case from those of other leakers who have not been prosecuted to overcome the claim of selective prosecution, nor has the government dispelled the claim that the defendant has been chosen from among similarly situated persons to be prosecuted now because of his prior public statements that were highly critical of the government. Accordingly, Counts One through Four of the Indictment should be dismissed.

### 2.  Defendant is at least entitled to discovery into the basis for this prosecution.

Mr. Kiriakou is at a significant disadvantage compared to other defendants who are the subject of improper prosecutions because the information he needs to prove that this prosecution was selective and/or vindictive is largely classified. Unlike, for instance, a defendant in a drug

JNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

case who can point to a vast collection of statistics regarding other similarly situated defendants, *see, e.g., Drugs and Drug Crime*, NCJ 165148 (Dep't of Justice),[4] the identities or actions of those similarly situated to Mr. Kiriakou are hidden by the classification system. Mr. Kiriakou cannot identify the sources of classified information in the articles cited in the motion to dismiss because he does not know their identities. To further identify those individuals and analyze their circumstances as compared to defendant's would require access to classified information which the government does not intend to share. (*See* Consolidated Opposition at 16) (characterizing Kiriakou's request for the information necessary to definitively prove the allegation of impermissible prosecution as a "fishing expedition"). If the Court does not see sufficient grounds to dismiss Counts One through Four on the present record, defendant respectfully submits that he should be granted discovery into (1) information regarding the investigation and decisions whether to prosecute similarly situated individuals, and (2) internal government communications, including from the Department of Justice and the CIA, concerning the reasons for bringing this prosecution.

The government argues that Mr. Kiriakou has made no credible showing of the different treatment of similarly situated individuals which could lead to discovery on the claim. (Consolidated Opposition at 16.) A court is permitted to consider the government's explanation for its conduct, but it is not required to rely on those explanations. *See United States v. Greenwood,* 796 F.2d 49, 52 (4th Cir. 1986) ("the district court *may* consider the government's explanation for its conduct.") (emphasis added). The government cites *Greenwood* to argue that Mr. Kiriakou has provided only speculation to support his claim. But in *Greenwood* the defendant's claim of racial animus was supported by nothing more than "Greenwood's own

---

[4]    http://bjs.ojp.usdoj.gov/content/pub/pdf/dcf.pdf

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

statements" and his claims were "denied by affidavit." *Id.* In contrast, here the public record and the government's evidence from Guantanamo show that other individuals who leaked classified information have not been prosecuted. Further, the defendant in *Greenwood* could not point to any "relevant facts which discovery might provide." *Id.* Here, discovery could provide information about the treatment of similar cases that would demonstrate the lack of distinguishing factors, and communications revealing the government's motives in bringing this prosecution and the animus that defendant believes exists on the part of the government as the result of his public statements.

Mr. Kiriakou need not establish all the elements of selective or vindictive prosecution in order to prevail on his motion for discovery. *United States v. Jones*, 159 F.3d 969, 978 (6th Cir. 1998) ("Obviously, a defendant need not prove his case in order to justify discovery on an issue."). In *Jones*, the evidence that local law enforcement had not referred non-African-Americans for federal prosecution in crack cocaine cases when they referred Jones was not enough to establish a *prima facie* case of selective prosecution, but it was enough to entitle the defendant to discovery on the issue. *Id.* at 975-78. Contrary to the government's assertions, the information from the public record and the Guantanamo filing demonstrate that individuals who leak classified information, even those so similarly situated as to have contributed to the same document which began this investigation, have not been prosecuted.

The peculiar circumstances of a case may overcome the "initial presumption of legal regularity in enforcement of the penal laws." *United States v. Falk*, 479 F.2d 616, 622 (7th Cir. 1973). The circumstantial evidence in this case supports the claims of vindictive and selective prosecution. No mechanism permits Mr. Kiriakou to further prove his claim without discovery; the peculiar circumstances of this case are that the government wholly controls all the necessary

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

information to add further proof to this claim because it is all classified. Finally, but importantly, this case is unique in that there is already a serious public debate about the bona fides of the government's decisions about "leak" investigations and prosecutions. *See, e.g.,* Floor Statement of Senator John McCain (Selective/Vindictive Prosecution Motion at 7); *Good Leak, Bad Leak* (*Id.* at 8 n.15). Discovery in this case is essential so that the public's legitimate concerns about the validity of the government's prosecutorial decisions can be addressed.

Accordingly, Kiriakou respectfully submits that he should be permitted to obtain discovery concerning other similar cases and the government's communications concerning this prosecution.[5]

### C. Sections 421(a) and 793(d) Are Impermissibly Vague and Overbroad.

In his Vagueness/Overbreadth Motion, defendant raised constitutional challenges to 50 U.S.C. § 421(a), the statute charged in Count One, and 18 U.S.C. § 793(d), the statute charged in Counts Two, Three and Four. This section of the reply will address several issues that run through the government's opposition to this motion, and then each statute in turn.

#### 1. Applicability of the First Amendment; relevance of over-classification

In its response, the government asserts that CIA officers "have no First Amendment right to disseminate" the type of information relating to covert agents that is covered by Section 421(a). (Consolidated Opposition at 20.) It also asserts that "unauthorized disclosures in violation of Section 793(d) ... do not fall under the category of speech entitled to First Amendment protection." (Consolidated Opposition at 27.) While there is case law upholding the CIA's right to engage in pre-publication review of manuscripts, and allowing prosecutions under

---

[5]    At the very least, the Court should require the government to produce discovery *in camera* to assure that Mr. Kiriakou is not the subject of an improper prosecution.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Section 793(d) to go forward, the government's arguments should not be taken as establishing that the First Amendment has no application to an analysis of the statutes at issue here.

Indeed, the two concurrences in *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988), a case involving Section 793, were written expressly to refute that point. Judge Wilkinson stated:

> I do not think the First Amendment interests here are insignificant. Criminal restraints on the disclosure of information threaten the ability of the press to scrutinize and report on government activity. There exists the tendency, even in a constitutional democracy, for government to withhold reports of disquieting developments and to manage news in a fashion most favorable to itself. Public debate, however, is diminished without access to unfiltered facts.
>
> \* \* \*
>
> The First Amendment interest in informed popular debate does not simply vanish at the invocation of the words "national security." National security is public security, not government security from informed criticism.

*Morison*, 844 F.2d at 1081 (Wilkinson, J., concurring).

Judge Phillips noted that in the opinion of the court,

> there are earlier suggestions that as applied to conduct of the type charged to Morison, the Espionage Act statutes simply do not implicate any first amendment rights. On that point, I agree with Judge Wilkinson's differing view that the first amendment issues raised by Morison are real and substantial and require the serious attention which his concurring opinion then gives them.

*Morison*, 844 F.2d at 1085 (Phillips, J., concurring). Thus, as recognized in *United States v. Rosen*, 445 F. Supp.2d 602, 630 (E.D. Va. 2006), "the panel majority in *Morison* viewed the application of § 793(e) to Morison as implicating the First Amendment."

The government also argues that defendant's "opinions about the extent of classification or over-classification" have no bearing on the vagueness or overbreadth analyses. (*See* Consolidated Opposition at 23; also at 24, 27-28). As demonstrated in defendant's opening

motion, however, the problem of over-classification is not a matter of the defendant's opinion or belief. Instead, it has been expressly recognized by the President, who in 2009 called for recommendations regarding "[e]ffective measures to address the problem of over classification," and by Congress, which found that "[o]ver-classification of information ... negatively affects the dissemination of information within the Federal government and with state, local, and tribal entities, and with the private sector." (*See* Vagueness/Overbreadth Motion at 4.) The efficacy of the classification system is critically important to the operation of Sections 421(a) and 793(d). Access to classified information is one of the elements of Section 421(a). Whether information is classified has been treated as "highly probative," even if not always sufficient, on the issue of whether that information constitutes national defense information within the meaning of Section 793. *See Rosen*, 445 F. Supp.2d at 623. The fact of over-classification – acknowledged by both the executive and legislative branches of government – means that a significant amount of information, the release of which would do no harm to the United States, is nevertheless classified. Disclosure of this information, which should be protected by the First Amendment in the same way as unclassified information,[6] is undoubtedly chilled by reliance on classification as "highly probative" of the application of the espionage statutes.

---

[6]    "The government has no legitimate interest in censoring unclassified materials." *McGehee v. Casey*, 718 F.2d 1137, 1141 (D.C. Cir. 1983).

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

## 2.    Section 421(a)

As argued in defendant's opening motion, Section 421(a) should be struck down on vagueness[7] and overbreadth grounds. Defendant pointed out the vagueness of the undefined term "affirmative measures" as used in the statute, which criminalizes the disclosure of information identifying a covert agent by a person knowing, *inter alia*, "that the United States is taking affirmative measures to conceal such covert agent's intelligence relationship to the United States." 50 U.S.C. § 421(a). In its response, the government cites dictionary definitions of this term and also points to examples of affirmative measures identified in the statute's legislative history. However, the "plain meaning" definition offered by the government (*see* Consolidated Opposition at 19) is no more illuminating than the statutory language. And Congress chose not to adopt the purported examples from the legislative history as part of the statute, despite the fact that the act has a definitional section where other terms used in the law are defined. *See* 50 U.S.C. § 426. Thus, neither of these sources provides the constitutionally required notice as to when the statute applies.

Moreover, Section 421(a) by its terms requires that the defendant know that the United States "is taking" affirmative measures for concealment of the covert agent's relationship with the government. The statute thus contemplates that there will be situations where there is a covert

---

[7]    In its description of the standards applicable to the vagueness analysis, the government asserts that persons whose activities are clearly covered by a statute are not entitled to challenge it on vagueness grounds. (Consolidated Opposition at 18.) For the sake of clarity, it is important to note that this proposition applies only to "as applied" challenges. Where fundamental First Amendment rights are involved and a statute "reaches a substantial amount of constitutionally protected conduct," *Kolender v. Lawson*, 461 U.S. 352, 358 n.8 (1983) (internal citation omitted), a defendant may bring a facial vagueness challenge even if the statute is not vague as applied to the defendant. *See Farrell v. Burke*, 449 F.3d 470, 496-97 (2d Cir. 2006) (Sotomayor, J.). Defendant is not arguing that the government has misstated the standard, and raises this point just so there is no confusion about the analysis appropriate to each type of vagueness challenge.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

agent with respect to whom affirmative measures to conceal are *not* being taken, or were once taken but have now lapsed. Are these situations covered? Even for a former CIA officer such as the defendant, the statute offers no guidance as to the type, extent or duration of the "measures" that must be taken and, therefore, no notice as to when it will apply.

Defendant's challenge to Section 421(a) as overbroad is based on the statute's failure to require the government to prove that the defendant intended to injure the United States or had reason to believe that the disclosures would be harmful to the U.S. or helpful to an enemy. Without this element, Section 421(a) improperly criminalizes speech without a compelling governmental need to do so.[8] The government responds that no persons with access to classified information have a "legitimate need" to reveal information identifying a covert agent, whose identities are appropriately classified, so there cannot be a substantial number of instances in which the statute would apply impermissibly.

But the government's approach applies the wrong perspective. In a situation where there is public scrutiny of past government intelligence activities, and the press is carrying out its First Amendment function by seeking to provide the public with facts about what happened, providing information about personnel involved in those intelligence activities may allow for more accurate reporting to the public. If such disclosures will not harm the United States or help its enemies (as could be the case, for example, where there has already been public discussion of the subject as the result of other disclosures of the same or similar information), there is no compelling

---

[8]   The government cites passages from *Broadrick v. Oklahoma*, 413 U.S. 601 (1973), for the overbreadth analysis that applies when conduct is involved, but this case involves pure speech.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

government interest to be achieved by secrecy, and therefore no appropriate grounds under the First Amendment for criminalizing the disclosures.

Although the government further argues that there is no "substantial" overbreadth here, the rampant problem of over-classification suggests that there may well be a significant number of instances where disclosure of non-harmful yet still classified information about CIA agents may be chilled by the criminal penalties imposed by Section 421(a). Further, the evidence submitted in defendant's motion to dismiss for selective or vindictive prosecution demonstrates that the press, in carrying out its mission to inform the public, actively seeks disclosures about intelligence activities and that a number of individuals have found it important to provide such information to the press.[9] These disclosures should be protected where no harm or intent to harm can be shown. Section 421(a)'s failure to include a harm element renders it impermissibly overbroad.

### 3. Section 793(d)

Defendant also challenges Section 793(d) on the basis of vagueness and overbreadth. As acknowledged in defendant's opening motion, the constitutionality of this statute has been upheld on both grounds, based on the application of judicial glosses that (partially) clarify its broad language and limit its scope. *See Morison*, 844 F.2d at 1071-1076; *Rosen*, 445 F. Supp.2d at 625-26, 639-41, 643. Certainly those glosses are necessary, but for the reasons set forth in defendant's opening motion, they are not sufficient to save the constitutionality of the statute.

As Judge Phillips' concurrence in *Morison* recognized,

> If one thing is clear, it is that the Espionage Act statutes as now broadly drawn are unwieldy and imprecise instruments for prosecuting government "leakers" to the

---

[9] These arguments also support defendant's facial vagueness challenge to Section 421(a) and his challenges to Section 793(d).

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

> press as opposed to government "moles" in the service of other countries. Judge Wilkinson's opinion convincingly demonstrates that those statutes can only be constitutionally applied to convict press leakers (acting for whatever purposes) by limiting jury instructions which sufficiently flesh out the statutes' key elements of "relating to the national defense" which, as facially stated, is in my view, both constitutionally overbroad and vague.

*Morison*, 844 F.2d at 1085-86 (Phillips, J., concurring).

Indeed, Judge Phillips went on to express the view that absent controlling precedent, he would question the constitutionality of the statute even with the judicial gloss supplied:

> Here, were we writing on a clean slate, I might have grave doubts about the sufficiency of the limiting instruction used in Morison's trial. The requirement that information relating to the national defense merely have the "potential" for damage or usefulness still sweeps extremely broadly.

*Id.* at 1086 (Phillips, J., concurring).

In its response, the government asserts that defendant's vagueness argument fails because the statute requires that the defendant "willfully" communicate national defense information to someone not entitled to receive it. But a scienter requirement is not a complete bar to a vagueness challenge; it is only a *mitigating* factor. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982) ("[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed.") (footnote omitted). Even with the limiting instructions that have been applied, the statute "still sweeps extremely broadly" and both fails to provide sufficient notice as to what types of disclosures are covered and improperly captures protected communications. In addition, as noted above, the courts' reliance on the classification status of information as "highly probative" of whether it is covered national defense information means that the statute criminalizes – and therefore chills – the disclosure of information as to which there is no

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

17

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

compelling need for secrecy. For these reasons, Section 793(a) is both impermissibly vague and overbroad.

Wherefore, for the reasons set forth above and in defendant's original motion papers, defendant respectfully submits that his motion for a bill of particulars, his motion for dismissal of Counts One through Four on the grounds of selective and/or vindictive prosecution, and his motion to dismiss Counts One through Four on the grounds that Sections 421(a) and 793(d) are impermissibly vague and overbroad should be granted.

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

Respectfully submitted,

/s/ Plato Cacheris

Plato Cacheris
(Va. Bar No. 04603)
pcacheris@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ John F. Hundley

John Francis Hundley
(Va. Bar No. 36166)
jhundley@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Robert P. Trout

Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Jesse I. Winograd

Jesse I. Winograd
(Va. Bar No. 79778)
jwinograd@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Mark J. MacDougall

Mark J. MacDougall
(Admitted *Pro Hac Vice*)
mmacdougall@akingump.com
Attorney for John Kiriakou
AKIN GUMP STRAUSS
    HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 887-4510
Fax:  (202) 887-4288

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE

## Certificate of Service

I hereby certify that on this 13th day of July, 2012, I filed the foregoing reply, by hand, with the Classified Information Security Officer pursuant to the Protective Order for Classified Information. Pursuant to the Protective Order, the Classified Information Security Officer will deliver the foregoing to the Court and to counsel for the United States:

Lisa L. Owings
Lisa.owings@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

Ryan P. Fayhee
ryan.fayhee@usdoj.gov
U.S. Department of Justice
Trial Attorney, Counterespionage Section
600 E Street, N.W.
Washington, D.C. 20004

Mark E. Schneider
Mark.schneider@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

W. Neil Hammerstrom, Jr.
Neil.hammerstrom@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

Iris Lan
Iris.lan@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

/s/ Jesse I. Winograd

Jesse I. Winograd, (Va. Bar No. 79778)
jwinograd@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

UNCLASSIFIED / CLEARED FOR PUBLIC RELEASE