IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
UNITED STATES OF AMERICA      )
                              )
        v.                    )      1:12cr127 (LMB)
                              )
JOHN KIRIAKOU                 )
                              )
        Defendant.            )
```

<u>MEMORANDUM OPINION</u>

Before the Court is defendant John Kiriakou's ("Kiriakou" or "defendant") Motion to Dismiss Counts 1, 2, 3 and 4 of the Indictment for Vagueness and Overbreadth ("Motion"), which has been fully briefed and argued by the parties.  For the reasons discussed below, the Motion will be denied.

## I.    BACKGROUND[1]

On April 5, 2012, the grand jury returned a five-count indictment charging Kiriakou with one count of disclosure of information identifying a covert agent in violation of 50 U.S.C. § 421(a) (Count I), three counts of disclosure of national defense information in violation of 18 U.S.C. § 793(d) (Counts II-IV), and one count of trick and scheme to conceal a material

---

[1] For purposes of the Motion, the Court relies on the facts as alleged in the indictment. <u>See</u> <u>United States v. Rosen</u>, 445 F. Supp. 2d 602, 607 n.2 (E.D. Va. 2006); <u>see also</u> <u>United States v. Huet</u>, 665 F.3d 588, 595 (3rd Cir. 2012) ("In evaluating a Rule 12 motion to dismiss, a district court must accept as true the factual allegations set forth in the indictment." (citations omitted)).

fact in violation of 18 U.S.C. § 1001(a)(1) (Count V). <u>See</u> Dkt. No. 22 (indictment).[2] Kiriakou now moves to dismiss counts I through IV, arguing that the charging statutes are unconstitutionally vague and overbroad.

## A. <u>Kiriakou's Employment with the CIA</u>

While an employee of the CIA from 1990 to 2004, Kiriakou held a Top Secret security clearance, had access to Sensitive Compartmented Information ("SCI"), and "had regular access to classified and national defense information relating to CIA programs, operations, methods, sources, and personnel." Indictment ¶¶ 5-6. In January 1990, before starting his employment with the CIA, Kiriakou entered into a secrecy agreement, in which he agreed as follows:

> I understand that in the course of my employment...I may be given access to information or material that is classified or is in the process of a classification determination...that, if disclosed in an unauthorized manner would jeopardize intelligence activities of the United States Government. I accept that by being granted access to such information or material I will be placed in a position of special confidence and trust and become obligated to protect the information and/or material from unauthorized disclosure.
>
> In consideration for being employed or otherwise retained to provide services to the Central Intelligence Agency, I hereby agree that I will never disclose in any form or any matter, to any person not

---

[2] In Count V, not a subject of the instant Motion, the Government alleges that Kiriakou lied to the CIA's Publications Review Board in seeking authorization to publish his memoirs when he falsely stated that certain portions of the book relating to a classified investigative technique were fictionalized.

> authorized by the Central Intelligence Agency to receive it, any information or material...that I know is classified...or is in the process of a classification determination....
>
> I understand that...the disclosure of information that I agreed herein not to disclose can, in some circumstances, constitute a criminal offense....
>
> I understand that nothing in this agreement limits or otherwise affects any provision of criminal or other law that may be applicable to the authorized disclosure of classified information, including...section 793[]...of Title 18, United States Code....

Id. ¶ 7(a) (alterations in original). Kiriakou also signed a non-disclosure agreement related to his access to SCI, which in pertinent part read:

> I hereby acknowledge that I have received a security indoctrination concerning the nature and protection of SCI, including the procedures to be followed in ascertaining whether other persons to whom I contemplate disclosing this information have been approved for access to it, and that I understand those procedures....
>
> I have been advised that unauthorized disclosure, unauthorized retention, or negligent handling of classified information by me could cause irreparable injury to the United States or could be used to advantage by a foreign nation. I hereby agree that I will never divulge anything marked as SCI or that I know to be SCI to anyone who is not authorized to receive it without prior written authorization from the United States Government Department or agency...that last authorized my access to SCI. I understand that it is my responsibility to consult with appropriate management authorities in [the agency] that last authorized my access to SCI, whether or not I am still employed by or associated with [the agency]....

3

> In addition, I have been advised and am aware that any unauthorized disclosure of SCI by me may constitute a violation or violations of Untied States criminal laws, including the provisions of...Section[] 793...[of] Title 18, United States Code....

Id. ¶ 7(b) (alterations in original). According to the indictment, Kiriakou subsequently entered into at least seven additional non-disclosure agreements with similar provisions related to the disclosure of classified information. Id. ¶ 8.

## B. Classified Information

Kiriakou is accused of disclosing three types of classified information to two journalists. In Counts I and II, Kiriakou is charged with disclosing to a journalist ("Journalist A") the identity of a covert CIA officer ("Covert Officer A") as well as the fact that Covert Officer A was a branch chief in a particular CIA office and was associated with the CIA's Rendition, Detention, and Interrogation Program (the "RDI program"). Specifically, on July 11, 2008, Kiriakou allegedly informed Journalist A that Covert Officer A had been his branch chief in a particular office, and on August 19, 2008, he emailed Journalist A the first and last name of Covert Officer A, stating that "[i]t came to me last night." See Indictment Count I ¶¶ 3(a), 6. Covert Officer A's association with the CIA had been classified for more than twenty years and his involvement with the RDI program was also classified. Indictment ¶ 11.

4

In Counts III and IV, Kiriakou is charged with disclosing to Journalist A and another journalist ("Journalist B") the association of a non-covert CIA employee ("Officer B") with the RDI program and the CIA's March 2002 RDI operation to capture terrorism suspect Abu Zubaydah. See id. ¶¶ 10, 12. Count III alleges that in a May 29, 2008 email, Kiriakou informed Journalist B that Officer B was in Pakistan in March 2002, "thereby confirming Officer B's participation in the RDI Program and the Abu Zubaydah operation, information which was then classified." Id. Count III ¶ 5. The next month, Journalist B "publicly identified Officer B and purported to describe Officer B's role in the Abu Zubaydah operation in an article, 'Inside the Interrogation of a 9/11 Mastermind,' published in The New York Times." Id. ¶ 3.

Count IV alleges that on November 12, 2007, Kiriakou provided the personal email address of Officer B to Journalist A. Id. Count IV ¶ 3. Then, in an email dated May 17, 2008, Journalist A questioned Kiriakou about enhanced interrogation techniques, asking, "[i]n [Country X] and then in [another specific country], was [first name of Officer B] trained to do the techniques, or was he just asking the questions as the heavies were doing the various techniques[?]" Id. ¶ 4. Three days later, Kiriakou responded that "[First name of Officer B] was not trained in the enhanced techniques. He was simply there

5

to ask the questions that the analysts had posed....Your assertion on individual roles is correct." Id. (alteration and omission in original). On November 12, 2008, Kiriakou allegedly again confirmed to Journalist A that Officer B was associated with the RDI program. Id. ¶ 5.

## II. DISCUSSION

### A. The Statutes

In Count I, Kiriakou is charged with violating the Intelligence Identities Protection Act, 50 U.S.C. § 421(a) ("IIPA"), which provides:

> Whoever, having or having had authorized access to classified information that identifies a covert agent, intentionally discloses any information identifying such covert agent to any individual not authorized to receive classified information, knowing that the information disclosed so identifies such covert agent and that the United States is taking affirmative measures to conceal such covert agent's intelligence relationship to the United States, shall be fined under title 18, United States Code, or imprisoned not more than 15 years, or both.

The IIPA defines "covert agent" as:

> (A)   [A] present or retired officer or employee of an intelligence agency or a present or retired member of the Armed Forces assigned to duty with an intelligence agency—
>
> > (i)   whose identity as such an officer, employee, or member is classified information, and
> >
> > (ii)   who is serving outside the United States or has within the last five years served outside the United States; or

6

(B)  a  United  States  citizen  whose  intelligence relationship  to  the  United  States  is  classified information, and—

  (i)   who  resides  and  acts  outside  the  United States  as  an  agent  of,  or  informant  or source  of  operational  assistance  to,  an intelligence agency, or

  (ii)  who  is  at  the  time  of  the  disclosure  acting as  an  agent  of,  or  informant  to,  the  foreign counterintelligence  or  ...  counterterrorism components  of  the  Federal  Bureau  of Investigation; or

(C)  an individual,  other  than  a  United  States  citizen, whose  past  or  present  intelligence  relationship  to the  United  States  is  classified  information  and  who is  a  present  or  former  agent  of,  or  a  present  or former  informant  or  source  of  operational  assistance to, an intelligence agency.

50 U.S.C. § 426(4).

Counts II through IV allege violations of 18 U.S.C.

§ 793(d), which imposes criminal penalties on:

Whoever,  lawfully  having  possession  of,  access  to, control  over,  or  being  entrusted  with  any  document, writing,  code  book,  signal  book,  sketch,  photograph, photographic  negative,  blueprint,  plan,  map,  model, instrument,  appliance,  or  note  relating  to  the national  defense,  or  information  relating  to  the national  defense  which  information  the  possessor  has reason  to  believe  could  be  used  to  the  injury  of  the United  States  or  to  the  advantage  of  any  foreign nation, willfully communicates,  delivers,  transmits  or causes  to  be  communicated,  delivered,  or  transmitted or  attempts  to  communicate,  deliver,  transmit  or  cause to  be  communicated,  delivered  or  transmitted  the  same to  any  person  not  entitled  to  receive  it,  or  willfully retains  the  same  and  fails  to  deliver  it  on  demand  to the  officer  or  employee  of  the  United  States  entitled to receive it . . . .

7

Id. (emphasis added). Kiriakou is charged under the provision prohibiting unauthorized disclosure of "information relating to the national defense which information the possessor has reason to believe could be used to the injury of the United States or to the advantage of any foreign nation." He argues that both statutes are unconstitutionally vague and overbroad. Each challenge will be addressed in turn.

### B. Vagueness

The vagueness doctrine is "rooted in due process principles and is basically directed at lack of sufficient clarity and precision in the statute." United States v. Morison, 844 F.2d 1057, 1070 (4th Cir. 1988)(footnote omitted). A statute is impermissibly vague if it "either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." Id. (internal quotation marks omitted (quoting Connally v. Gen. Constr. Co., 269 U.S. 385, 391 (1926))). In upholding the constitutionality of another statute attacked on vagueness grounds, the Supreme Court explained:

> [A]lthough the prohibitions [of a statute] may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest. The general class of offense [sic] to which the provisions are directed is plainly within their terms, and they will not be struck down as

8

vague, even though marginal cases could be put where doubts might arise.

Arnett v. Kennedy, 416 U.S. 134, 159 (1974) (quoting Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, 413 U.S. 548, 578-79 (1973)) (internal quotation marks and alterations omitted). Accordingly, "courts considering vagueness challenges require that criminal statutes 'either standing alone or as construed, make reasonably clear at the relevant time that the defendant's conduct was criminal.'" United States v. Rosen, 445 F. Supp. 2d 602, 618 (E.D. Va. 2006) (quoting United States v. Lanier, 520 U.S. 259, 266 (1997)).

### 1. 50 U.S.C. § 421(a)

Kiriakou argues that § 421 is unconstitutionally vague because the statute does not define the "affirmative measures" that the Government must take to conceal a covert agent's identity to trigger application of the statute. This challenge is without merit.

Under Morison, "if one is not of the rare 'entrapped' innocents but one to whom the statute clearly applies, irrespective of any claims of vagueness, he has no standing to challenge successfully the statute under which he is charged for vagueness." 844 F.2d at 1071; see also Holder v. Humanitarian Law Project, 130 S. Ct. 2705, 2719 (2010) ("[E]ven to the extent a heightened vagueness standard applies [to speech], a plaintiff

whose speech is clearly proscribed cannot raise a successful vagueness claim under the Due Process Clause of the Fifth Amendment for lack of notice. And he certainly cannot do so based on the speech of others."). Despite defendant's assertion that the statute is so vague that there is "no way to determine in advance whether any particular disclosure is prohibited by the statute," and that a person is therefore left to "'guess its meaning,'" see Def.'s Mem. at 11 (quoting United States v. Lanier, 520 U.S. at 266), there is no question that defendant, a person who possessed a top secret security clearance, was on clear notice of the illegality of disclosing the identity of a covert agent. Whether Officer A was a covert agent is, of course, an evidentiary issue for trial.

As the Government rightly argues, § 421(a) applies only to a limited class of persons, those who "had authorized access to classified information that identifies a covert agent." This limitation narrows the application of the statute to persons who are by definition aware of the extremely sensitive nature of classified information, their responsibilities in handling it, and the "affirmative measures" the agency takes to protect the secrecy of covert agents. Kiriakou signed numerous secrecy and non-disclosure agreements that clearly articulated his responsibilities regarding such information and the risks associated with unauthorized disclosure. Kiriakou has no

10

credible argument that the term "affirmative measures" is so vague that he lacked adequate warning as to the conduct proscribed, such that his due process rights were violated. For all of these reasons, defendant's vagueness challenge to § 421(a) will be denied.

## 2. 18 U.S.C. § 793(d)

Defendant argues that the phrases "information relating to the national defense" and "could be used to the injury of the United States or to the advantage of any foreign nation" in § 793(d) are unconstitutionally vague. He recognizes that he faces an uphill battle, as both the Fourth Circuit and this district have previously upheld the statute against vagueness challenges to the same language. Specifically, in Morison, the Fourth Circuit found the phrase "relating to the national defense" in § 793(d) constitutional in light of the scienter requirement and the district court's jury instructions defining "willfully" and "national defense."[3]  844 F.2d at 1071-72

---

[3] The jury instructions had defined "national defense" to include "all matters that directly or may reasonably be connected with the defense of the United States against any of its enemies. It refers to the military and naval establishments and the related activities of national preparedness. To prove that the documents or the photographs relate to national defense there are two things that the government must prove. First, it must prove that the disclosure of the photographs would be potentially damaging to the United States or might be useful to an enemy of the United States. Secondly, the government must prove that the documents or the photographs are closely held in that [they]...have not been made public and are not available to

11

(internal quotation marks omitted) (citing United States v. Dedeyan, 584 F.2d 36, 39 (4th Cir. 1978) (holding that the phrase "relating to the national defense" is not unconstitutionally vague in the context of § 793(f)(2) because the phrase "has a well understood connotation")).

As the Government correctly argues, the Fourth Circuit has held that vagueness concerns can be cured by the statute's requirement that any communication of protected information be willful, i.e., that the defendant "acted with knowledge that his conduct was unlawful." United States v. Bursey, 416 F.3d 301, 309 (4th Cir. 2005) (quotation omitted); see Morison, 844 F.2d at 1071 (affirming definition of "willful" as "done voluntarily and intentionally and with the specific intent to do something that the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law")(emphasis in original). The Morison court also found that jury instructions on "national defense" and willfulness "removed any possibility of vagueness in the application of the statutes." Morison, 844 F.2d at 1072.

This conclusion is consistent with the commonsense proposition that "where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from

the general public." Morison, 844 F.2d at 1071-72 (alteration and omission in original).

12

lack of warning or knowledge that the act which he does is a violation of law." Screws v. United States, 325 U.S. 91, 102 (1945); see also United States v. Jaensch, 678 F. Supp. 2d 421, 433 (E.D. Va. 2010) ("[W]hen a statute imposes a scienter requirement to the effect that the defendant should have known of the unlawfulness of his conduct, it is impossible, as a matter of logic, that he would lack adequate notice of the unlawfulness of his conduct.")(citation omitted). Again, as with § 421(a), at this stage there is no reason to find that Kiriakou was not fully aware that the identity of a covert agent was "information relating to the national defense," the unauthorized disclosure of which "could be used to the injury of the United States or to the advantage of any foreign nation."

Courts have reaffirmed the constitutionality of § 793 in the aftermath of Morison. See United States v. Rosen, 445 F. Supp. 2d 602 (E.D. Va. 2006) (rejecting a vagueness challenge to § 793(d) and (e)). Using the analysis articulated in Rosen, to satisfy the element of "information relating to the national defense," the Government must prove "(i) that the information is closely held by the government and (ii) that the information is the type of information that, if disclosed, could harm the United States." Id. at 618. The latter prong is satisfied if there is an "occasion for secrecy," meaning that disclosure "implicates an important government interest such as the

13

national security." Id. at 621 (citation omitted). As in Morison, Rosen focused on the limiting effect of the statute's "willfulness" and "reason to believe" elements,[4] concluding that these two prongs save the phrase "information relating to the national defense" from "fatal vagueness" and enabled it to "pass[] Due Process muster." Id. at 622 ("[G]iven these two limitations the phrase provides fair notice of what it encompasses and is also an adequate safeguard against arbitrary enforcement."); cf. United States v. Drake, 818 F. Supp. 2d 909, 918-19 (D. Md. 2011) (reviewing precedent rejecting vagueness challenges to the phrase "relating to the national defense" and concluding that it is not unconstitutionally vague in the context of § 793(e)).

In an attempt to avoid the weight of this precedent, Kiriakou argues that § 793(d) is still unconstitutionally vague because courts have relied on the classified status of information to determine whether it is closely held by the government and harmful to the United States. In defendant's view, any reliance placed on the classification system is

---

[4] As the Government correctly argues, the "reason to believe could" cause injury language applies to intangible communication only, not to documents or other tangibles. This language heightens the scienter requirement with respect to conduct such as that alleged here. See Rosen, 445 F. Supp. 2d at 626 (explaining that the "reason to believe" language "is intended to heighten the government's burden when defendants are accused of communicating intangible information").

14

undermined by the government's purported over-classification of information that would not in fact threaten the security of the United States if made public.

Regardless of whether the "government itself acknowledges that it over-classifies a great deal of information," as defendant argues, Def.'s Mem. at 13, the classification system is the purview of the executive branch; accordingly, the Court declines to second-guess the CIA's classification decisions. See El-Masri v. United States, 479 F.3d 296, 305 (4th Cir. 2007) (observing that courts are "ill-equipped to become sufficiently steeped in foreign intelligence matters to serve effectively in the review of secrecy classifications in that area" (quoting United States v. Marchetti, 466 F.2d 1309, 1318 (4th Cir. 1972))); United States v. Snepp, 897 F.2d 138, 141 n.2 (4th Cir. 1990) ("Courts must avoid second-guessing the CIA's decision to classify information because they have only a limited knowledge of foreign intelligence matters.").

The policy reasons for this approach are self-evident. As the Fourth Circuit has explained, "[t]he executive branch's expertise in predicting the potential consequences of intelligence disclosures is particularly important given the sophisticated nature of modern intelligence analysis, in which the significance of one item of information may frequently depend upon knowledge of many other items of information, and

15

what may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene and may put the questioned item of information in its proper context." El Masri, 479 F.3d at 307 (citation, internal quotation marks, and alterations omitted) (quoting Marchetti, 466 F.2d at 1318). For these reasons, defendant's argument that perceived failures of the classification system are relevant to the constitutional analysis here is unpersuasive. Moreover, defendant cannot reasonably argue that the classified status of a covert agent and the RDI program did not put him on notice that the information was closely held by the government, related to the national defense, and could harm the United States if disclosed.[5] For all of these reasons, defendant's vagueness challenge to § 793(d) will be denied.[6]

## C. Overbreadth

Defendant also argues that § 421(a) and § 793(d) are overbroad in contravention of his First Amendment rights. For many of the same reasons discussed above, this challenge fails.

---

[5] Of course, at trial the Government must prove that the disclosed information was "relating to the national defense," which is an evidentiary question.

[6] Kiriakou argues that the narrower prohibitions of § 421, such as limiting the definition of covert agents to those who have served overseas in the last five years, illustrates that § 793(d) is vague in comparison. This argument is unavailing; § 793(d) is not unconstitutionally vague merely because it encompasses more conduct than the narrowly-targeted § 421.

16

The Supreme Court has held that when the First Amendment is implicated, a party may "argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech." United States v. Williams, 553 U.S. 285, 304 (2008) (quoting Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494-95 & nn. 6-7 (1982)). The Court has "provided this expansive remedy out of concern that the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech-especially when the overbroad statute imposes criminal sanctions." Virginia v. Hicks, 539 U.S. 113, 119 (2003)(citation omitted). Nevertheless, invalidating a statute due to overbreadth is disfavored because of the "social costs created by the…doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct." Id.; see Broadrick v. Oklahoma, 413 U.S. 601, 613 (1973) (explaining that application of the overbreadth doctrine is done "sparingly and only as a last resort").

Where allegations concern conduct, rather than pure speech, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." Morison, 844 F.2d at 1075 (quoting Broadrick, 413 U.S. at 615)(internal quotation marks omitted). If a statute is overbroad, it cannot be enforced "until and

17

unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression." Hicks, 539 U.S. at 119 (quoting Broadrick, 413 U.S. at 613)(internal quotation marks omitted).

The Fourth Circuit has articulated three circumstances in which the overbreadth doctrine may properly be applied:

1) [W]hen the governmental interest sought to be implemented is too insubstantial, or at least insufficient in relation to the inhibitory effect on [F]irst [A]mendment freedoms;
2) when the means employed bear little relation to the asserted governmental interest; and
3) when the means chosen by the legislature do in fact relate to a substantial governmental interest, but that interest could be achieved by a less drastic means--that is, a method less invasive of free speech interests.

Morison, 844 F.2d at 1075 (quoting Martin H. Redish, The Warren Court, the Burger Court and the First Amendment Overbreadth Doctrine, 78 N.W. U. L. Rev. 1031, 1035 (1983)). As the Fourth Circuit explained, the espionage statutes undoubtedly do not fall into the first two categories given that there exists a substantial governmental interest in proscribing the disclosure of classified information and the relevant statutes are directly related to achieving this end. Id. at 1076 (discussing § 793). Accordingly, the only remaining question is whether Congress could have used less drastic means to achieve its legitimate objective. Id.

### 1. 50 U.S.C. § 421(a)

Kiriakou maintains that § 421(a) is unconstitutionally overbroad because the Government need not prove that a defendant intended to harm the United States or had reason to believe that disclosing the information would cause harm to the United States or benefit an enemy. Def.'s Mem. at 15. In defendant's view, the statute improperly balances First Amendment and Government interests because "it penalizes speech well beyond those instances where the government needs to maintain secrecy in order to prevent actual harm to the national security." Id. at 15-16.

Section 421 targets a narrow class of persons and conduct: the intentional disclosure of classified information identifying a covert agent by a person with authorized access to such information. "[T]he First Amendment imposes no blanket prohibition on prosecutions for unauthorized leaks of damaging national security information…." Morison, 844 F.2d at 1085 (Wilkinson, J., concurring). The identity of a covert officer is information that goes to the heart of the nation's intelligence activities, and its disclosure could very well threaten the personal safety of the agent whose identity is revealed as well as undermine confidence in the Government's ability to protect its covert officers. This very real danger places exposure of a covert agent's identity in a unique class

of cases. See id. at 1081 (recognizing a legitimate need for secrecy because "[w]hen the identities of our intelligence agents are known, they may be killed"); cf. In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1173-74 (D.C. Cir. 2005) (Tatel, J., concurring in the judgment) (explaining in the testimonial privileges context that "[l]eaks similar to the crime suspected here (exposure of a covert agent) apparently caused the deaths of several CIA operatives in the late 1970s and early 1980s, including the agency's Athens station chief" (citing Haig v. Agee, 453 U.S. 280, 284-85 & n. 7 (1981))).

Even assuming arguendo the existence of a hypothetical scenario justifying disclosure of a covert agent's identity, "[t]he mere fact that one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." Williams, 553 U.S. at 303 (quoting Members of City Council of L.A. v. Taxpayers for Vincent, 466 U.S. 789, 800 (1984)) (internal quotation marks omitted). Accordingly, the Court finds that § 421(a) is not unconstitutionally overbroad.

## 2. 18 U.S.C. § 793(d)

The Fourth Circuit has also upheld § 793(d) against an overbreadth challenge, relying on the district court's limiting definitions of the statutory terms "national defense" and "one not entitled to receive." Morison, 844 F.2d at 1076; see also

20

Rosen, 445 F. Supp. 2d at 643 ("So construed, the statute is narrowly and sensibly tailored to serve the government's legitimate interest in protecting the national security, and its effect on First Amendment freedoms is neither real nor substantial as judged in relation to this legitimate sweep."). Kiriakou acknowledges the force of this precedent, but argues that these decisions did not properly balance the competing interests between national security and free speech. For the reasons discussed above, the Court rejects defendant's argument that the statute is overbroad due to the purported over-classification of information and the First Amendment interests at stake; accordingly, the Court will not reconsider the precedent set in Morison and Rosen and will uphold the constitutionality of § 793(d).

## III. CONCLUSION

For the foregoing reasons, the Court finds that § 793(d) and § 421(a) are constitutional and will therefore deny defendant's Motion to Dismiss by an Order that will accompany this Memorandum Opinion.

Entered this ___8th___ day of August, 2012.

Alexandria, Virginia

                                        /s/

                                Leonie M. Brinkema
                                United States District Judge

21