IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMNAL No. 1:12cr127 |
| | ) | (Hon. Leonie M. Brinkema) |
| JOHN C. KIRIAKOU, | ) | |
| | ) | |
| Defendant. | ) | |

**(U) GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

**(U) I. Introduction**

(U) The United States, through the undersigned counsel, hereby responds to the Defendant's Motion to Compel Production of Documents ("Motion to Compel"). For each of the six categories of information sought by the Defendant, the Government has either already provided the information or is not obligated to provide the information pursuant to Rule 16 of the Federal Rules of Criminal Procedure or the *Brady* or *Giglio* doctrines. With respect to the information that has not been produced in discovery, to the extent that it exists, the Government respectfully submits that the information at issue does not contain exculpatory, impeachment, or other information that could be considered "relevant and helpful" to the defense within the meaning of applicable case law and, accordingly, the Motion to Compel should be denied.

**(U) II. Rule 16 Relevancy and the Disclosure of Classified Information**

(U) Rule 16 requires the government to disclose to a defendant "any relevant written or



1

recorded statement" of the defendant if two conditions are met: (1) that the statement is within the "government's possession, custody, or control"; and (2) that the attorney for the government "knows – or through due diligence could know – that the statement exists."

(U) In light of the compelling need to protect the nation's secrets when the United States invokes a claim of privilege based upon national security concerns, a defendant, seeking material within the scope of Rule 16 that is protected by the privilege, is required to establish that the material is more than simply "theoretically relevant" and within the scope of Rule 16. If the classified information is neither material to the determination of guilt or innocence nor helpful to the defense or essential to a fair determination of the case, then the classified information may be properly excluded from discovery. *United States v. Yunis*, 867 F.2d 617, 624-25 (D.C. Cir. 1989).

(U) The *Yunis* court analogized the government's need to protect classified information to its need to protect the identity of government informants. *Id*. at 623 (citing *C. & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103 (1948); *United States v. Nixon*, 418 U.S. 683, 710 (1974)). The court then employed the standard from *Roviaro* where the Supreme Court concluded that the informant's privilege must give way when disclosure of the information "is relevant and helpful to the defense of an accused." *Id*. at 522 (quoting *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957)).

(U) The *Yunis* court also noted that the *Roviaro* case suggests a balancing test prior to ordering the disclosure of the classified information --- even assuming the information to be disclosed is both "relevant" and "material" (i.e., genuinely helpful to the defense). *Id*. at 624.

2

██████

The *Yunis* court noted that two other circuits had included a balancing of interests test, including the Fourth Circuit. *United States v. Smith*, 780 F.2d 1102, 1110 (4th Cir. 1985) (en banc); *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (balancing the defendant's interest in disclosure against the United States' need to keep the information secret). The *Yunis* court did not reach this balancing test because it held that the defendant had failed to meet the threshold burden of establishing that the classified Rule 16 information he sought was "helpful to the defense of the accused." *Yunis*, 867 F.2d at 625.[4]

(U) In *United States v. Abu Ali*, 528 F.2d 210 (4th Cir. 2008), the Fourth Circuit reaffirmed this analytical approach, reasoning that "[w]hen evaluating the government privilege in classified information which CIPA serves to protect, . . . district courts must ultimately balance th[e] 'public interest in protecting the information against the individual's right to prepare his defense.'" *Id.* at 247 (quoting *Smith*, 780 F.2d at 1105, and noting that *Smith* adopted the test applied to the informant's privilege in *Rovario v. United States*, 353 U.S. 53, 62 (1957), as appropriate to evaluate the government's classified information privilege); *see also Rosen*, 557 F.2d at 195 ("[I]n assessing admissibility, [a district] court must consider not just the relevance of the evidence, but also the applicability of any government privilege, such as military or state secrets.") (citing *Smith*, 780 F.2d at 1107, 1110). Further, "[t]o overcome the governmental privilege, 'the defendant must come forward with something more than

---

[4] (U) Other circuits have adopted a similar analytical approach. *See United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1260-61 (9th Cir. 1998) (adopting *Yunis* standard); *United States v. Pringle*, 751 F.2d 419, 425, 427-28 (1st Cir. 1984) (classified information need not be disclosed if it was not relevant to "guilt or innocence," was not "helpful to the defense and was not essential to a fair determination of the cause"), *vacated and remanded on other grounds*, 479 U.S. 805 (1986).

3

██████

speculation as to the usefulness of disclosure.'" *Abu Ali*, 528 F.3d at 247 (quoting *Smith*, 780 F.2d at 1108). "The 'district court may order disclosure only when the information is at least essential to the defense, necessary to [the] defense, and neither merely cumulative nor corroborative, nor speculative.'" *Id.* (quoting *Smith*, 780 F.2d at 1110).

(U) III. **Specific Categories of Documents**

    (U) A. <u>**The Government Has Fulfilled its Discovery Obligations Regarding the Defendant's CIA Employment Records**</u>

(U) In his Motion to Compel, the Defendant seeks information in the possession of the Government concerning "commendations and awards" received while a CIA employee and "specific instances of [the Defendant's] exceptional valor, heroism, and self sacrifice in service to the United States." Motion to Compel at 5. Narrowed very slightly, the Defendant requests "the bases for . . . commendations and awards" and "details of [the Defendant's] service to the CIA" preceding the operation to locate and capture Abu Zubaydah ("Zubaydah") in 2002. *Id.* at 5-6. This request should be rejected.

(U) The Government has already satisfied its *Brady*, Jencks, and *Giglio* obligations by producing, among other things, the Defendant's personnel file and extensive information regarding the Zubaydah operation, much of it only in an abundance of caution. Specifically, the Government has produced to the Defendant both his personnel and cover files, which detail his employment history with the CIA, including commendations and awards received. The Government has also produced documents and communications that it was able to locate concerning the Defendant's work on the large scale operation to capture Zubaydah. Other than

4

what is contained in the Defendant's personnel file or the Zubaydah operation materials, the Government has not produced the underlying details of specific operations that preceded Zubaydah's capture because the details of those operations are not relevant to any of the allegations in the Indictment and not helpful or material to the preparation of the defense.

(U) Commendations and awards bestowed on the Defendant constitute evidence of "good conduct," but are neither relevant to the charges of unlawfully disclosing classified, national defense information on specific occasions, nor can such conduct be used to negate the *mens rea* element of the statutes under which he is charged. *See Michelson v. United States*, 335 U.S. 469, 477 (1948) (evidence of specific good acts or course of good conduct not admissible to negate criminal intent); s*ee also United States v. Camejo*, 929 F.2d 610, 612-613 (11th Cir. 1991) (where defendant sought to negate the *mens rea* element of drug conspiracy by showing that in prior contacts with the witness, he did not engage in criminal conduct); *United States v. Burke*, 781 F.2d 1234, 1243 (7th Cir. 1985) (holding that the admissibility of good conduct evidence is a question of relevancy and "evidence that a defendant frequently performs lawful or laudable acts does not often establish that some subsequent act is also lawful or laudable.").

(U) Should the Defendant wish to put his character at issue, he may do so only within the framework established by Federal Rules of Evidence 404(a) and 405, which explicitly forbids the specific acts evidence he seeks to offer. Rule 404(a) establishes a narrow exception to the general prohibition on character evidence and provides that "a defendant may offer evidence of the defendant's pertinent trait." Fed. R. Evid. 404(a)(1) & (a)(2)(A). But such evidence may be

offered only by reputation or opinion testimony, not by specific acts evidence.[5] Rule 405(a); *see Michelson*, 335 U.S. at 469 ("The witness may not testify about defendant's specific acts or courses of conduct"); *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) (in CIPA litigation, affirming district court's rejection of defendant's request to testify about details of classified operations and its exclusion of "evidence of specific acts for the purpose of proving his alleged character traits."). Permitting the type of good-acts evidence the defendant seeks to introduce would eviscerate the limitations of Rule 405. *See* Fed. R. Evid. 405 advisory committee notes (concluding that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time."). It would also lead to a lengthy mini-trial on factual issues irrelevant to the jury's factual findings.

### (U) B. The Government Has Satisfied its Discovery Obligations with Respect to Relevant Communications

(U) The Defendant seeks communications between "several critical witnesses including, but not limited to," the two journalists identified by pseudonym in the Indictment, and a defense investigator retained by the attorneys representing certain Guantanamo Bay detainees. *See* Motion to Compel at 6-7.

(U) As part of the investigation into the unlawful disclosures, the Government executed search warrants on two email accounts associated with the Defendant and conducted a voluntary deposition of a private investigator. The investigator provided certain email communications

---

[5] (U) Of course, should the defendant offer character evidence, the government could inquire on cross-examination into specific instances of the defendant's conduct, but that authority is the government's. *See* Rule 405(a); *Michelson*, 335 U.S. at 479 ("The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.").

with reporters and described how relevant persons had been identified and information about them obtained. Among the journalists on whom the investigator most relied was Journalist A, who, in turn, as the investigation revealed, had been in extensive contact with the Defendant.

(U) All of the content from the email search warrants, as well as the transcript from the voluntary deposition and all of the emails that the private investigator had provided, have been produced in classified discovery. The Government has not executed search warrants or served subpoenas on any email accounts maintained by the journalists referenced in the Indictment or on the investigator. Accordingly, the Government has satisfied its discovery obligations because all relevant statements by the journalists (nearly all of which were obtained from the Defendant) concerning the unlawful disclosures at issue, as well as all of the information provided to the Government by the investigator, have been produced to the Defendant.

(U) The Defendant speculates that additional materials critical to his defense are being withheld. By way of example, he cites the newspaper article that reported on the association of Officer B with the RDI program and noted that Journalist B wrote that "two dozen current and former American and foreign intelligence officials [were] interviewed for this article." Motion to Compel at 8. The identities of these unnamed officials are unknown to the Government, and hence, any statements these officials may have made to the journalist in question are beyond the Government's reach.

### (U) C. The Government Is Not Required to Prove that the Defendant Intended to Harm the United States

(U) The third category of information sought by the Defendant concerns documents that tend to show or reflect that the Defendant had no intent to harm the United States. Motion to Compel at 8-9. To the extent that the Government could identify information susceptible to such a subjective and self-serving description, that information would be produced. The Government is not aware of any particular documents fitting this description, but has produced any information identified through its extensive investigation and discovery review that could arguably be considered either exculpatory as to guilt or otherwise material or helpful to the preparation of the defense.

(U) In any event, despite Defendant's contention otherwise, and based on the plain language of the statute and applicable case law, the Government is not required to demonstrate at trial that the Defendant specifically intended to harm the United States, but only that he had a "reason to believe" that the information he unlawfully communicated "could be used to the injury of the United States or to the advantage of any foreign nation." 18 U.S.C. § 793(d).

(U) Indeed, in addressing a vagueness challenge with respect to Section 793(d) in *United States v. Morison*, 844 F.2d 1057 (4th Cir. 1988), the Fourth Circuit noted the legislative history of the statute:

> "No showing of intent is necessary as an element of the offense, provided the possessor has reason to believe that the material communicated could be used to the detriment of the United States or to the advantage of a foreign nation."

*Id.* at 1073 n.26 (quoting H.R. Rep. No. 647, 81st Cong., 1st Sess. (1949) at 3-4). The justification for the absence of intent was based on the premise that Section 793(d) "deals with persons presumably in closer relationship to the government which they seek to betray." *Id*; *see also United States v. Truong*, 629 F.2d 908 (4th Cir. 1980) (approving a jury instruction where "reason the believe," as used in Sections 794(a) and 794(c), means that "a defendant must be shown to have known facts from which he concluded or reasonably should have concluded that the information could be used for the prohibited purposes").

(U) While the government need not prove that the Defendant *intended* to harm the United States, Section 793(d) of course requires a showing that he acted willfully. Although the Supreme Court has noted that "a variety of phrases have been used to describe" the term "willfully," *Bryan v. United States*, 524 U.S. 184, 193 (1998) (analyzing willfulness requirement of 18 U.S.C. § 924(a)(1)(D), the Firearms Owner's Protection Act), "all that is required" is for the government to establish that the defendant acted with "knowledge that the conduct was unlawful." *Id.* at 196; *see also United States v. Bursey*, 416 F.3d 301, 309 (4th Cir. 2005) (adopting *Bryan* standard).

(U) In *Morison*, the Fourth Circuit upheld a jury instruction directing that an act is done "willfully" under Section 793(d) when "it is done voluntarily and intentionally and with the specific intent to do something the law forbids. That is to say, with a bad purpose either to disobey or to disregard the law." *Id.* at 1071; *see also Truong*, 629 F.2d at 919 (noting that, in the context of Sections 794(a) and 794(c), which likewise require that the defendant acted "with intent or reason to believe" that the transmission of certain information would injure the United

States or foreign nation, district court instructed a jury that "willfully" meant "voluntarily and intentionally and with a specific intent to do something the law forbids.").

(U) The Defendant's reliance on *United States v. Rosen*, 445 F. Supp. 2d 602, 643 (E.D. Va. 2006), is misplaced. As an initial matter, unlike the defendant in this case, the defendants in *Rosen* were non-government lobbyists, who were not bound by non-disclosure agreements and thus had no recognized duty not to disclose classified, national defense information. To overcome an as-applied vagueness challenge to the statute, the trial court imposed a specific intent element on the Government based largely on the fact that the transmission of the information was oral. Specifically, the trial court reasoned that the "oral transmission of information relating to the national defense makes it more difficult for defendants to know whether they are violating the statute" and, without requiring proof of specific intent to harm, there was risk of subjecting "non-governmental employees to prosecution for the innocent, albeit negligent, disclosure[s]." *Rosen*, 445 F. Supp. 2d at 624-27, 640-41. *Rosen* is distinguishable from this case, and the "judicial gloss" imposed by the district judge does not apply because Kiriakou transmitted the information electronically, not orally, and Kiriakou had a recognized obligation not to divulge classified, national defense information to those not entitled to receive it.[6]

---

[6] (U) In an interlocutory CIPA § 7 appeal brought in *Rosen*, 557 F.3d 192 (4th Cir. 2009), one of the issues raised by the Government was whether it was required to prove that the *Rosen* defendants specifically intended to injure the United States. Although the Fourth Circuit did not find it had jurisdiction to consider the improvised element, the court did express concern "…by the potential that the §793 Order imposes an additional burden on the prosecution not mandated by the governing statute." *Rosen*, 557 F.3d at 199 n.8.

### (U) D. There Is No Requirement To Disclose the Nature of Security Clearances Held by Government Investigators

(U) The Defendant seeks to discover the nature of security clearances held by the FBI Special Agents who conducted the recorded interview of him on January 19, 2012. The Defendant argues that whether the Government took steps necessary "to ensure that its own investigation did not result in the disclosure of a covert officer's identity to individuals not entitled to learn it" is relevant to the Government's "ability to prove that it took legally sufficient 'affirmative measures' to conceal the identity of that agent." Motion to Compel at 10. The Defendant further argues that if the FBI agents did not have the requisite clearances to question him about these subjects, suppression of his statements could be warranted. *Id.*

(U) Although the assigned case agents have conducted themselves in accordance with appropriate security protocols during the course of this investigation, the Government has properly declined to provide such information. This interview was conducted more than three years after the Defendant is alleged to have disclosed the covert officer's identity to others not entitled to receive it. There is no basis under any established theory of discovery to produce this information, and the Defendant's request is irrelevant to the allegations contained in the Indictment.

### (U) E. The Government Is Not Obligated to Disclose Information Concerning an Unrelated CIA Contractor



11





### (U) F. The Government Is Not Required To Produce Information Concerning Unrelated Investigations

(U) In his final request, the Defendant seeks to re-litigate his claim of selective prosecution and has moved to compel production of "records of declined prosecutions under 50 U.S.C. § 421, records of prior instances of public disclosure of the RDI program that did not result in criminal prosecution, and communications within or among the CIA and other government agencies that concern Mr. Kiriakou." Motion to Compel at 12. The Government relies upon the legal analysis set out in its Consolidated Response to the Defendant's Motions to Dismiss (Doc. # 50 at 8-16), but it is also worth noting here that nothing provided in discovery concerning the Defendant's various media appearances or the subsequent reaction of officials within the CIA to those appearances should disturb the Court's previous ruling. Then, as now, the Defendant has failed to identify an illegitimate prosecutorial motive and establish a "credible showing of different treatment of similarly situated persons" in order to support his selective prosecution claim and, therefore, his motion with respect to the production of any such documents should be denied. *Armstrong v. United States*, 517 U.S. 456, 470 (1996).



## CONCLUSION

(U) Accordingly, for all of the foregoing reasons, the Government respectfully requests that the Court deny the defendant's Motion to Compel.

> Respectfully submitted,
>
> Neil H. MacBride
> United States Attorney
>
> Mark E. Schneider/ Ryan Fayhee/ Iris Lan
> Special Attorneys to the Attorney General
>
> By: _____ /s/ _____
> W. Neil Hammerstrom, Jr.
> Assistant United States Attorney

Dated: September 26, 2012