███████████████

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

UNITED STATES OF AMERICA    )
                            )
v.                          )       No. 1:12cr127-LMB
                            )       (Hon. Leonie M. Brinkema)
JOHN C. KIRIAKOU            )
                            )
            Defendant.      )

**(U) RESPONSE TO DEFENDANT'S CIPA SECTION 5 FILING**

(U) The United States of America, by its undersigned counsel, respectfully responds to defendant's notice filed pursuant to Section 5 of the Classified Information Procedures Act (CIPA), 18 U.S.C. App. III § 5.

**(U) I.   Background**

(U) Defendant John C. Kiriakou is charged with four discrete instances of illegally disclosing particular information, to wit: disclosing the identity of Covert Officer A to Journalist A, in violation of 50 U.S.C. § 421(a); disclosing the association of Covert Officer A with the CIA, the Rendition, Detention and Interrogation Program (the "RDI Program"), and a particular RDI operation, to Journalist A, in violation of 18 U.S.C. § 793(d); disclosing the association of Officer B with the RDI Program and the operation to capture Abu Zubaydah (the "AZ operation") to Journalist B, in violation of 18 U.S.C. § 793(d); and disclosing the association of Officer B with the RDI Program to Journalist A, in violation of 18 U.S.C. § 793(d). Defendant is also charged with concealing and

███████████████

███████████████████████

covering up by trick and scheme a material fact, namely, that a particular classified investigative technique was used in the AZ operation, in violation of 18 U.S.C. § 1001(a)(1).

(U) Defendant lodged a filing on September 12, 2012, pursuant to Section 5 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. App. III § 5. The filing purports to provide notice of 75 separate categories of information that the defense asserts it intends to disclose at a public trial, including more than 3000 pages of cited examples, all of which refer to entire sets of or excerpts of documents, without designating what part or portion of any given page it wishes to use. In some categories, no examples are provided; the defense asserts that the records it does list are merely examples and not necessarily an exclusive list; and in no instance has the defense designated particular portions of the classified documents. The defense also disclaims any obligation to establish the relevance of any of the identified information at this stage. (*See* Motion at 2.)

(U) On September 19, 2012, at the suggestion of the government, the government and the defense met in an attempt to clarify and narrow the defendant's notice. As a result of those discussions, the defense did not change the scope of its notice, except, as reflected in a letter to the government subsequent to the meeting, the defense enlarged its request with respect to the PRB file (in requesting the entire file, as opposed to some subset) and altered its request with respect to Category No. 69, as reflected below. Further, it is the government's understanding that defendant's intentional use of the signal "*see, e.g.*" reflects a view that, from the defendant's perspective, the citations to specific records are merely non-exclusive examples and that additional records may nonetheless be disclosed, including from discovery tendered in July 2012 and before.

███████████████████████

████████████████████

## (U) II. CIPA Section 5 Procedures

### (U) A. Notice and Particularity as Remedy to Graymail

(U) "CIPA was enacted by Congress in an effort to combat the growing problem of graymail, a practice whereby a criminal defendant threatens to reveal classified information during the course of his trial in the hope of forcing the government to drop the criminal charge against him." *United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985). By requiring defendants to "specifically set out the classified information the defendant believes he will reply upon in his defense," and authorizing the court to make pretrial rulings regarding its admissibility, CIPA sought to limit the risk that the government would be unable to evaluate disclosure claims and instead simply "abandon prosecution rather than risk possible disclosure of classified information." *Id.*

(U) Accordingly, CIPA establishes procedures by which courts rule on pretrial matters concerning the discovery, admissibility and use of classified information in criminal cases. *See United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). CIPA's fundamental purpose is to "harmonize a defendant's right to obtain and present exculpatory material [at] trial and the government's right to protect classified material in the national interest." *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996). It "evidence[s] Congress's intent to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States v. Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006). The Fourth Circuit has analogized the analysis concerning the admissibility of such evidence to the qualified informer's privilege established by the Supreme Court in *United States v. Roviaro*, 353 U.S. 53 (1957). *Smith*, 780 F.2d at 1108.

(U) For those defendants to whom classified discovery has been provided or who otherwise

████████████████████

3

possess classified information, Section 5 requires that defendants provide timely written notice to the court and the government describing any classified information that the defendant reasonably expects to disclose at trial. *See* 18 U.S.C. App. III § 5(a). Notification must take place "within the time specified by the court, or where no time is specified, within thirty days prior to trial." *Id.*

(U) Although the description of the classified information may be brief, it must be "particularized" and set forth the specific classified information that the defendant reasonably believes to be necessary to his defense. *See* 18 U.S.C. App. III § 5(a); *United States v. Badia*, 827 F.2d 1458, 1465 (11th Cir. 1987). "[T]he objective of CIPA is to provide the government with both notice of the defendant's intent to introduce sensitive information at trial, *and a particularized description of the classified information prior to trial.*" *Id.* at 1465 (emphasis original). Accordingly, "[t]he notice must *specifically* set out the classified information the defendant believes he will rely upon in his defense. A general statement of the areas the evidence will cover is insufficient." *Smith*, 780 F.2d at 1105 (emphasis added). CIPA "requires that the defendant be forthcoming, before trial, as to anticipated evidence" and establish "what classified information will actually be — as opposed to vaguely threatened to be — made public if the case proceeds." *United States v. Collins*, 720 F.2d 1195, 1999 (1983). This applies both to exhibits and to testimony, on direct or cross-examination. *See generally United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984).

(U) The Section 5(a) notice must be specific and particularized because it is the "central document" in the procedures envisioned under CIPA. *Collins*, 720 F.2d at 1199. The requirement in Section 5(a) that "such notice shall include a brief description of the classified information" does not mean "a vague description." *Id.* Nor does it matter that "the government can locate specific data

4

about defendant's knowledge of sensitive information in its own records." *Id.* Instead, the "Section 5(a) notice requires that the defendant state, with particularity, which items of classified information entrusted to him he reasonably expects will be revealed by his defense in this particular case." *Id.* "The court, the government and the defendant should be able to repair to the Section 5(a) notice and determine, reliably, whether the evidence consisting of classified information was contained in it." *Id.* For a court to "countenance a Section 5(a) notice which allows a defendant to cloak his intentions and leave the government subject to surprise" would simply "require the defendant to reduce 'greymail' to writing." *Id.*

(U) When evaluated in light of these standards, the defendant's CIPA Section 5 notice is, with respect to many categories and types of information listed, fatally defective. *See Collins*, 720 F.2d at 1199 ("If CIPA is to abolish the practice of 'greymail,' it is beyond dispute that the notice cannot, itself, constitute 'greymail.' What has been called 'greymail' is the vague, non-specific, threat."). Filing with the court broad areas and categories, citing as non-exclusive "examples" thousands of pages of discovery, does not constitute a sufficiently particularized notice under Section 5(a). It is neither the court's nor the government's obligation to sift through these documents to discern precisely what information the defendant intends to disclose at trial. More importantly, any attempt to do so would be futile, as both the Court and the government could only speculate as to what specific classified information the defendant intends to disclose among these thousands of pages of materials.

(U) In this case, the defendant's often vague and overbroad notice undermines the important purpose of CIPA – preventing graymail and surprise – and the statute's carefully-crafted procedures

in several ways. First, without sufficient notice, the government in some instances is unable to make definitive classification determinations about the information potentially covered by a given topic, including to what extent unclassified information is included within a broad topic (and therefore not subject to CIPA). Second, the lack of particularity can make it difficult for the Court to make evidentiary determinations regarding the use, relevance, and admissibility of much of the information. Third, insufficient notice hinders the government's ability to "weigh the costs of, or consider alternatives to, disclosure," *Badia*, 827 F.2d at 1465 – *i.e.*, substitutions, summaries, or stipulations in a section 6(c) proceeding – and may prevent the Court from evaluating the adequacy of such alternative proposals and issuing written findings related thereto. Finally, in contrast to the categorical format adopted in portions of the section 5 notice, the defendant's evidence will necessarily be more specific and detailed, in a manner which cannot be foreseen.

(U) Unless the defendant is ordered to produce a sufficient notice, the Court, along with the government, is left open to surprise at trial, and the potential for unnecessary disruption and delay after a jury is empanelled is increased. As a result, with respect to those categories identified as deficient below, this Court should reject the notices as deficient, and, pursuant to Section 5(b), preclude the disclosure of any of the classified information referenced in those notices. *Id.* at 1466.

#### (U) B.   Relevance, Admissibility, and the Government's Privilege in the CIPA Context

(U) In light of the compelling need to protect the nation's secrets when the United States invokes a claim of privilege based upon national security concerns, a defendant, seeking to disclose classified information within the scope of Rule 16 that is protected by the privilege, is required to establish that the information is more than simply "theoretically relevant" and within the scope of

████████████████████

Rule 16. Specifically, "[w]hen evaluating the government privilege in classified information which CIPA serves to protect, . . . district courts must ultimately balance th[e] 'public interest in protecting the information against the individual's right to prepare his defense.'" *United States v. Abu Ali*, 528 F.2d 210, 247 (4th Cir. 2008) (quoting *Smith*, 780 F.2d at 1105, and noting that *Smith* adopted the test applied to the informant's privilege in *Roviaro v. United States*, 353 U.S. 53, 62 (1957), as appropriate to evaluate the government's classified information privilege); *see also United States v. Rosen*, 557 F.3d 192, 195 (4th Cir. 2009) ("[I]n assessing admissibility, [a district] court must consider not just the relevance of the evidence, but also the applicability of any government privilege, such as military or state secrets.") (citing *Smith*, 780 F.2d at 1107, 1110). "But the governmental privilege, and indeed responsibility, is nonetheless a 'qualified one' in the sense that it must give way when the information 'is relevant and helpful to the defense, or is essential to a fair determination of a cause.'" *Id.* (quoting *Smith*, 780 F.2d at 1107). Specifically, as the Fourth Circuit in both *Abu Ali* and *Smith* both recognized:

> [t]he trial court is required to balance the public interest in nondisclosure against the defendant's right to prepare a defense. A decision on disclosure of such information must depend on the "particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the [evidence,] and other relevant factors."

*Abu Ali*, 528 F.3d at 247 (quoting *Roviaro*, 353 U.S. at 61); *Smith*, 780 F.2d at 1107 (quoting same). "To overcome the governmental privilege, 'the defendant must come forward with something more than speculation as to the usefulness of disclosure.'" *Abu Ali*, 528 F.3d at 247 (quoting *Smith*, 780 F.2d at 1108). "The 'district court may order disclosure only when the information is at least

████████████████████

███████████████████

essential to the defense, necessary to [the] defense, and neither merely cumulative nor corroborative, nor speculative.'" *Id.* (quoting *Smith*, 780 F.2d at 1110).

### (U) C. Rule 403 Balancing

(U) As noted above, the defendant has, as an initial matter, the burden of establishing that the evidence it intends to disclose is relevant and essential. *Abu Ali*, 528 F.3d at 247. In making the general relevance determination in the CIPA context, Rules 401 and 403 of the Federal Rules of Evidence are applicable. *See Smith*, 780 F.2d at 1105 ("CIPA did not change the existing law of evidence regarding admissibility"). Under Rule 401 of the Federal Rules of Evidence, relevance "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The Court's inquiry, however, does not end with Rule 401, as the Court still must determine whether or not the classified information is excludable under Rule 403. Specifically, a district court should exclude relevant evidence when "its probative value is 'substantially outweighed' by the potential for undue prejudice, confusion, delay or redundancy." *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997) (quoting Fed. R. Evid. 403); *see also Old Chief v. United States*, 519 U.S. 172, 182-186 (1997) (evidence may be excluded under Rule 403 if its probative value is substantially outweighed by certain dangers, including unfair prejudice, confusion of the issues, or misleading the jury); *United States v. Aramony*, 88 F.3d 1369, 1378 (4th Cir. 1996) (internal quotation marks omitted)(stating that evidence is unfairly prejudicial and excludable under Rule 403 "when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and . . . this risk is disproportionate to the probative value of the offered evidence.").

████████████████

██████████████████

(U) The test is one of unfair prejudice, and "'[t]he mere fact that the evidence will damage the defendant's case is not enough.'" *United States v. Benkahla*, 530 F.3d 300, 310 (4th Cir. 2008) (quoting *United States v. Hammoud*, 381 F.3d 316, 341 (4th Cir. 2004)). "'[T]he evidence must be unfairly prejudicial, and the unfair prejudice must substantially outweigh the probative value of the evidence.'" *Benkahla*, 530 F.3d at 310 (quoting *Hammoud*, 381 F.3d at 341) (internal quotations omitted, emphasis in original).

(U) "The court's determinations regarding relevance and admissibility of evidence are accorded great deference, even in the context of CIPA § 6(a), and such decisions may only be overturned 'under the most extraordinary circumstances.'" *Rosen*, 557 F.3d at 199 (quoting *United States v. Fernandez*, 913 F.2d 148,155 (4th Cir. 1990)). "'The abuse of discretion standard also applies to the trial court's decision to reject a proposed substitution under [CIPA] § 6(c).'" *Rosen*, 557 F.3d at 199 (quoting *Fernandez*, 913 F.2d at 155). In order to preserve the record on appeal, at the conclusion of the hearing, the court must state in writing its determination as to each item of classified information. 18 U.S.C. App. 3, § 6(a).

**(U) III.  Categories of Information**

**(U) 1.  Publication Review Board ("PRB"): Category Nos. (1) to (32).**

(U) Defendant's notice refers to broad portions of the file kept by the Publication Review Board related to the publication of (a) the defendant's book (*see* Nos. (1) to (16) & (31)); and (b) an assortment of articles and speeches submitted by the defendant unrelated to the publication of the defendant's book (*see* Nos. (17) to (30) & (32)) (collectively, the "PRB Categories").  With the exception of Category No. 1, which seeks generally, without citing to any particular documents, all

██████████████████

████████████████

PRB file materials related to the defendant's book, the PRB Categories refer to particular bates numbers that, when taken together, correspond to a subset of PRB file materials produced to the defendant in classified discovery. However, by letter dated September 19, 2012 ("Defense Letter"), the defense informed the Government that "the defense intends to introduce the full PRB file" associated with the defendant. (Defense Letter at 1). For the reasons explained below, the defendant's notice is overbroad, because, with certain limited exceptions, the PRB file materials related to the publication of the defendant's book are irrelevant to the violations charged in this case, and the PRB file materials related to the speeches and articles are entirely irrelevant.[1]

(U) As an initial matter, a significant subset of the documents referenced by the defendant in its PRB Categories are unclassified. For example, the following documents cited by the defense were marked as unclassified in discovery:

- From No. (2): CIA00011;

- From No. (3): CIA00061, CIA00121-30;

- From No. (5): CIA00271-74;

- From No. (7): CIA00523-26;[2]

---

[1] (U) Notably, the PRB file contains well over one thousand pages and includes classified information detailing the defendant's fourteen-year career with the CIA. Because the defendant merely seeks to introduce the entire PRB file, rather than identifying specific documents or particular submissions, it would be unduly burdenson if not nearly impossible for the CIA to craft summaries, substitutions, or stipulations if these thousand-plus pages of documents were deemed to be admissible en masse.

[2] (U) To be clear, this document is a cover letter, which on its own is unclassified, but when considered with the draft manuscript, which contains classified information, would be considered classified.

████████████████

████████████████

- From No. (9): CIA00772-75;

- From No. (12): CIA01275;

- From No. (13): CIA05394, CIA05424-25;

- Entire example cited in No. (14): CIA00010;

- From No. (18): CIA06745, CIA06754;

- From No. (24): CIA05552;

- From No. (26): CIA05439, CIA05432; and,

- From No. (32): CIA05432, CIA05439.

(U) Further, the CIA has also confirmed that the following cited documents, which either did not bear classification markings or had other designations, such as "treat as [certain classification level]," are unclassified:

- From No. (3): CIA00062-120;

- Entire example cited in No. (4): CIA00236;

- From No. (5): CIA00275-78;

- From No. (6): CIA00280-90;

- From No. (12): CIA01272-73;

- Entire example cited in No. (13): CIA01448-1668, CIA05396-98, CIA05407-5422, and all additional blank page separators (*i.e.*, CIA05395, CIA05400, CIA05404, CIA05400, CIA05395, CIA05426);

- Entire example cited in No. (18): CIA06746-47;

- Entire example cited in No. (19): CIA07196-98;

████████████████

███████████████

- Entire example cited in No. (21): CIA05521-23;

- Entire example cited in No. (22): CIA05530-32;

- Entire example cited in No. (23): CIA05544-46, CIA05539;

- From No. (24): CIA05554-56;

- Entire example cited in No. (25): CIA05563-65, CIA05561;

- From No. (26): CIA05440-41, CIA05434-35;

- From No. (27): CIA05261;

- Entire example cited in No. (28): CIA05268-72, CIA005281-83;

- Entire example cited in No. (29): CIA05289-91; CIA05295;

- Entire example cited in No. (30): CIA05315-18; and,

- From No. (32): CIA05433-38, CIA05440-42.

Accordingly, without conceding relevancy, the government submits that none of these documents are at issue here, given their unclassified status.

(U) With respect to the remaining materials, the government agrees that a limited subset of PRB file documents is relevant to prove the false statements violation charged in Count Four. Specifically, the government agrees that certain limited portions of the book-related documents are relevant, specifically, the defendant's initial correspondence with the PRB, prior to the publication of the *New York Times* article, in which the defendant did not include the information regarding the sensitive technique at issue in the false statement charge (*e.g.*, CIA00010-58 (defendant's October 17, 2007 submission); CIA06797-6807 (defendant's November 13, 2007 submission)); (b) the

███████████████

████████████████

defendant's first submission to the PRB after the publication of the *New York Times* article in which the defendant made the false statement regarding the sensitive technique and the PRB's response (*e.g.*, CIA00819-34 (defendant's letter to the PRB dated July 28, 2008); CIA 930-38 (Chapter 10 of the accompanying manuscript, in which the magic box technique is described); CIA00280-82 (PRB's response to the defendant's July 28, 2008 submission, asking the defendant to remove the magic box information)); and (c) the defendant's subsequent letter to the PRB, in which the defendant noted his removal of the information regarding the sensitive technique from his draft manuscript (*e.g.*, CIA07035-43 (*i.e.,* the defendant's letter dated November 9, 2008)). These book-related materials fall within the following PRB Categories listed in the defendant's CIPA filing:

- No. (1) (overall book-related materials);

- Nos. (2), (3), & (14) (regarding the defendant's first submission); and,

- Nos. (5), (6) & (11) (regarding the defendant's submission in which he made false statements).

(U) The government submits that the remainder of Category No. (1) and the remaining PRB Notice Categories containing citations with classified information are irrelevant. First, the defendant's PRB Categories includes an array of correspondence with the PRB file that post-date the file's last reference to the sensitive technique (*i.e.*, by the defendant in his submission dated November 9, 2008, informing the PRB that he had removed information about the sensitive technique from his manuscript). Specifically, those categories, in addition to Category No. (1), consist of Nos. (7) to (10), (12), (13), and (31). The government opposes the disclosure and use of

████████████████

████████████████████

those materials because they contain no information relating to the defendant's attempt to incorporate information related to the sensitive technique or the PRB's response, and neither do they contain any information relevant to the other counts. For the same reason, the defendant's attempt to disclose certain PRB correspondence regarding articles and speeches unrelated to the book (*i.e.*, Nos. (17), (20), and (27)) should be rejected, although, as noted above, much of the defendant's PRB Categories regarding speeches and articles is unclassified and therefore not at issue in the CIPA context (*i.e.*, Nos. (18), (19), (21), (22), (23), (24), (25), (26), (28), (29), (32)).

(U) Finally, the defendant's PRB Categories (15) and (16) cites as examples email correspondence that would be inadmissible at trial as impermissible hearsay.[3] To the extent the defense wishes to interview any of the individual correspondents, the defendant has not expressed such an intent in its notice.

### (U) 2. Covert Officer A: Category Nos. (33) to (48).

(U) Regarding Category No. (33), the government understands this item to advise that the defendant seeks to identify the true name of Covert Officer A in court. The association of Covert Officer A with the CIA is classified. The government intends to call Covert Officer A as a witness in its case in chief and is preparing a motion *in limine* to address various methods of protecting the

---

[3] (U) The sole page cited in connection with Category No. (15) (*i.e.*, CIA05742) is an excerpt from an email reflecting the overall initial impressions of a reviewer in response to the defendant's July 28, 2008 submission, in which defendant made the false statement regarding the sensitive technique. Similarly, the document cited in connection with Category No. (16) (*i.e.*, CIA09634-37) reflects lawyer correspondence and speculation on the classification of Officer B's association with the RDI program, in which the lawyer further states that "IROs make classification determinations, not me."

████████████████████

████████████████████

identity of Covert Officer A from public disclosure throughout trial, including by the use of a substitution. Aside from the fact of introducing Covert Officer A's name, No. (33) provides no notice of the content of any testimony and is defective insofar as the defense intends No. (33) to serve a broader purpose.

(U) Regarding Category No. (34), this category is vague and not particularized. It cites no examples and merely suggests a broad subject area of testimony, which likely encompasses significant classified information. Accordingly, the government is left guessing and is unable to respond without a particularized description of the anticipated testimony.

(U) Regarding Category No. (35), the government agrees that limited portions of the document are relevant, including information that Covert Officer A served under cover and that he served overseas within five years of the charged disclosures. *See* 50 U.S.C. § 426(4)(A). However, the document as a whole contains sensitive and irrelevant information (*e.g.*, Covert Officer A's name, pseudonym, personal identifying information, cities in which Covert Officer A served). To the extent that the defendant wishes only to use particular portions of the document cited, which covers a variety of information about Covert Officer's career over more than 25 years, it has not designated any such portions.

(U) Regarding Category No. (36), the defense refers broadly to unspecified "public records or documents" that may tie Covert Officer A to the United States Government. But this category fails to designate any particular public record or document. Linking any record containing the true name of Covert Officer A with this prosecution would disclose the classified CIA association of

████████████████████



Covert Officer A. Because any such record or document must be specifically identified to assess its classification, relevance, and admissibility, the notice is currently defective.

(U) Regarding Category No. (38), the defendant seeks to disclose, without any specific example, Covert Officer A's "use of his true name in his public life and descriptions of his job." Without specifics, the government is unable to respond. Insofar as Covert Officer A may have used his true name in various dimensions of "his public life," *e.g.*, on his birth certificate, in the phone book, or on his driver's license, this is plainly irrelevant to the charges relating to his CIA association.

16







(U) Regarding Category No. (44), the defendant seeks to disclose the names of countries or agencies to which Covert Officer A's affiliation with the CIA was declared. Specifically, defendant seeks to introduce a classified "Personal Security Questionnaire" in which Covert Officer A lists foreign governments and agencies to which he was known as a present or past employee of the CIA or United States intelligence. (*See* CIA04091-94, CIA09908). The names of countries and intelligence services to which Covert Officer A's name and CIA association were disclosed in the course of his official duties are irrelevant. To the contrary, particular liaison activities and relationships are essential to the conduct of foreign intelligence activities and do not constitute a public acknowledgment that would compromise Covert Officer A's cover or the closely held nature of his CIA association. Because the identity of the specific countries and services is irrelevant, such information should be excluded under Rules 401 and 403.

(U) Regarding Category No. (45), the defendant advises that he would also like to disclose "cables or other notifications" to foreign entities regarding Covert Officer A's affiliation with the CIA or United States Government. The notice is defective and fails to cite any record or exhibit that the defendant seeks to introduce.

(U) Regarding Category No. (46), the defendant hopes to present testimony "of any foreign government official regarding dissemination of [Covert Officer A]'s identity within and outside the



foreign government agency and any safeguards taken to preserve a U.S. agent's cover status," but fails to cite any examples. Without particularization, the notice is defectively vague, and the government cannot respond.

20



(U) 3. Abu Zubaydah: Category Nos. (49) to (51).



(U) Regarding Category No. (51), this category identifies not the information or content of any testimony, but merely advises that the defendant may seek to call as witnesses other participants in the AZ operation.  No. (51) is defective because it fails to identify the testimony that any such persons, were they to testify, would give.  Further, the fact that other persons participated in the capture operation is both unremarkable and irrelevant, as are the operational details, as addressed

---

[5](U) A detailed account of the defendant's activities in the AZ operation would be relevant and admissible only to impeach the defendant's credibility, should he testify.

████████████████████

*infra*, and should be excluded under Rules 401 and 403. To the extent that the defendant seeks to interview particular persons, the defendant should submit a specific request, which the government will convey to the prospective witness.

### (U) 4. Kiriakou's Service to the United States ("Specific Acts Evidence"): Category Nos. (52) to (57).

(U) The defense references broad categories of evidence that relate to "John Kiriakou's Service to the United States," including the defendant's complete and unredacted personnel file (*see* No. 52), performance awards and citations (*see* No. 53), description of the defendant's role in the AZ operation (*see* Nos. 54-56), and evidence concerning "involvement in operations and programs during his service in the CIA, including all operational material relating to Kiriakou" (*see* No. 57) (collectively, the "Specific Acts Evidence"). Being overwhelmingly irrelevant to the elements of the charged violations, the Specific Acts Evidence appears to be both a transparent attempt at graymail and aimed squarely at inducing jury nullification. The issue before the jury is neither the defendant's overall character nor whether he once rendered valuable service; to the contrary, the sole issue is whether the defendant committed the narrow violations alleged in the indictment. It is noteworthy that a mini-trial concerning the defendant's purported good acts would also put the defendant's disciplinary record and other misconduct at issue, which are also largely irrelevant. (*See, e.g.*, John Kiriakou, *The Reluctant Spy* at 75-79 (describing the defendant's assault upon a Greek baker by "holding his hair and beating his head against the pavement" and being nearly expelled from the country by United States Ambassador to Greece Nicholas Burns)).

(U) The defendant disclaims any obligation to articulate relevance or materiality, but the only

████████████████████

███████████████████

conceivable, if nonetheless flawed, theory of relevance is one based upon an erroneous understanding of the intent requirement, as occasionally misstated in defense pleadings. (*See, e.g.,* Motion to Dismiss Counts 1, 2, 3, and 4 of the Indictment for Vagueness and Overbreadth at 8 (Docket Entry 47)). The government has no obligation to prove, and does not intend to prove, that the defendant intended to harm the United States. The government must prove only that the defendant had a "reason to believe" that the information "could be used to the injury of the United States or to the advantage of any foreign nation." *See* 18 U.S.C. § 793(d); s*ee also United States v. Morison,* 844 F2d 1057, 1073 (4th Cir.1998). The defendant's intent to injure or serve the United States is not at issue.

(U) In any case, it is well-settled that "a defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa,* 897 F.2d 63, 70 (2d Cir. 1990) (affirming refusal to order discovery of tapes containing innocuous conversation). "It is equally clear that evidence of prior acts of good conduct is inadmissible to negate a defendant's criminal intent as to the charged offense." *See United States v. Rosen,* 2007 WL 4142776 (E.D. Va. Sept. 7, 2007) (citing *United States v. Camejo,* 929 F.2d 610, 613 (11th Cir.), *cert. denied, United States v. Setien,* 502 U.S. 880 (1991) (citations omitted)). Nor is it permissible to introduce other acts evidence to prove a defendant's character merely to show that on a particular occasion the person acted in accordance with the character. *See* Fed. R. Evid. 404(b).

(U) Should a defendant wish to put his character at issue, he may do so only within the framework erected by Federal Rules of Evidence 404(a) and 405. Rule 404(a) establishes a narrow exception to the general prohibition on character evidence and provides that "a defendant may offer

███████████████████

25

evidence of the defendant's pertinent trait." Fed. R. Evid. 404(a)(1) & (a)(2)(A). But such evidence may be offered only by reputation or opinion testimony, not by specific acts evidence. Rule 405(a); *see Michelson v. United States*, 335 U.S. 469, 477, 69 S. Ct. 213, 219, 93 L. Ed. 168 (1948) ("The witness may not testify about defendant's specific acts or courses of conduct ...."); *United States v. Wilson*, 750 F.2d 7, 9 (2d Cir. 1984) (in CIPA litigation, affirming district court's rejection of defendant's request to testify about details of classified operations and its exclusion of "evidence of specific acts for the purpose of proving his alleged character traits."). Of course, should the defendant place his character at issue, then the government would be permitted to inquire on cross-examination into specific instances of the defendant's conduct, but that authority is the government's. *See* Rule 405(a); *Michelson*, 335 U.S. at 479 ("The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him."). Permitting the type of good-acts evidence the defendant seeks to introduce would eviscerate the limitations of Rule 405. *See* Fed. R. Evid. 405 advisory committee notes (concluding that proof of character by means of specific acts "possesses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time.")

(U) The defendant's notice is also plainly inadequate with respect to Category Nos. (52), (53) and (57). No. (52) is overbroad in that it cites the defendant's entire personnel file, which includes a diverse array of records, and fails to specify which portions the defense intends to use. No. (53) cites no particular awards or citations, making classification review impossible. No. (57) calls for "all operational material relating to Kiriakou" "during his service in the CIA," apparently seeking

26

████████████████████████

to capture within its scope all of the defendant's work on "operations and programs" for the entirety of the defendant's tenure at the CIA, 1990 to 2004.

### (U) 5. Government's Alleged Bias Concerning Prosecution Decision: Category Nos. (58) to (60).

(U) The defendant advises that he wishes to introduce in evidence internal CIA records expressing various employees' opinions about the defendant's conduct and whether he should be prosecuted. (*See* Nos. 58-59.) But evidence that purports to show government bias in deciding to prosecute the defendant has no place before the jury. Defendant's claim of selective or vindictive prosecution, even were it colorable and not already rejected by this court, "relates not to the guilt or innocence of appellants, but rather addresses itself to a constitutional defect in the institution of the prosecution." *United States v. Marcum*, 16 F.3d 599, 602 (4th Cir. 1994) (quoting *United States v. Berrigan,* 482 F.2d 171, 175 (3d Cir.1973)). As the defendant has already done by moving to dismiss the indictment, the defendant must raise any such claim prior to trial and address it to the court, not the jury. *See United States v. Edwards*, 188 F.3d 230, 237 (4th Cir. 1999); Fed. R. Crim. P. 12(b)(2), 12(b)(3)(A). Accordingly, the evidence identified in Nos. (58) and (59) is irrelevant and inadmissible, and there is no basis to disclose any such classified information at trial.[6]

(U) Regarding Category No. (60), this internal CIA email correspondence describes CIA efforts to dissuade the *New York Times* from publishing the name of Officer B. Assuming the cited documents are the only records the defense seeks to use, these pages (*i.e.*, CIA03968-77) are

---

[6](U) The government does not intend to call as witnesses the authors of the correspondence identified in Nos. (58) and (59); therefore, they are also not admissible for impeachment.

████████████████████████

███████████████████████

unclassified and their admissibility and/or relevance need not be addressed through the CIPA process.

### (U) 6.  Additional Leaks: Category Nos. (61) to (70).

(U) Defendant advises that he wishes to introduce evidence concerning "alternative sources for the alleged leaks." (*See* Motion at 16-17).  But the specified evidence on which defendant relies chiefly concerns only the fact that illegal disclosures to Journalist A and/or Journalist B (or other journalists altogether) may have occurred, *in addition* to the defendant's disclosures memorialized on email and charged in the indictment, rather than as an *alternative to* those disclosures.  To the extent that defendant seeks to prove that the reporters' to whom the defendant is alleged to have made unauthorized disclosures may have had additional sources of classified information, such evidence serves not to exonerate the defendant, but rather to establish additional crimes by third-parties.  Even if, for example, while the defendant was making a charged unauthorized disclosure, another person made the same unauthorized disclosure, their conduct would not serve to immunize each other; rather, there would simply be two violations.  As well-established case-law reflects, "[c]ustom, involving criminality, cannot justify a criminal act."  *Smith v. United States*, 188 F.2d 969, 970 (9th Cir. 1951); *see United States v. Brookshire*, 514 F.2d 786, 789 (10th Cir. 1975) (rejecting defendant's complaint that "statute has not been used to prosecute others for the actions" and holding that "custom and usage involving criminality do not defeat a prosecution for violation of a federal criminal statute.");  *Burnett v. United States*, 222 F.2d 426, 427 (6th Cir. 1955) ("No custom is a justifiable defense for violation of the criminal code of the United States.").

███████████████████████

███████████████████

28





(U) Regarding Category No. (65), this exhibit consists of a spreadsheet, in which there is an entry reflecting a possible reference to an unidentified news story purporting to reveal that a unknown source disclosed information about procedures a person allegedly used to obtain permission from the White House to apply enhanced interrogation techniques to Abu Zubaydah. (*See*



CIA02969). The fact that others may have illegally leaked other potentially classified information is irrelevant. Nor does the blurb bear upon the identity of Covert Officer A and Officer B or their association with pertinent activities. And it is hearsay. Accordingly, the record is irrelevant and inadmissible.

(U) Regarding Category Nos. (66) and (67), the emails cited pertain neither to Covert Officer A nor Officer B, or to their association with classified programs, and are thus irrelevant. It is noteworthy that No. (67) betrays a continuing intent to transform this litigation into a wide-ranging referendum on waterboarding, rather than a focused trial of the specific violations alleged in the indictment. Insofar as Nos. (66) and (67) purport to give notice for evidence beyond the specifically referenced emails, the notice is also insufficient.

(U)  Regarding Category No. (69), the notice is inadequate, referencing broadly "[t]he investigation into the classified D-95 filing," without limitation.[7] In a separate letter, the defense

---

[7](U) In response to the government's request that the notice be clarified and made more specific, the defense advised: "As to the request for clarification as to Reference Number 69, the defense intends to use and disclose facts developed during the investigation of the filing

31

███████████████████

advised, without limitation, that it wished to introduce "facts developed during the investigation of

the filing." The more than 50 pages of classified documents reference numerous CIA employees not

at issue in this prosecution. The pleading also asserts that the defendants "plans on interviewing

witnesses regarding their statements about exposure in the classified D-95 filing." Such a notice is

deficient under any standard of specificity and particularity, and any evidence within this category

not specifically noticed elsewhere in the defendant's pleading should be excluded.

(U)  Regarding Category No. (70), the notice fails to identify any public source records and

thus the government is unable to respond. The government understands that the defense may seek

to admit the June 22, 2008 *New York Times* article published by Journalist B, and without conceding

relevance or confirming or denying the information contained therein, the government has no

classification objection. In any event, any public reporting or records made available after Officer

B's identity was publicized in the June 22, 2008 article are also irrelevant.

**(U) 7.  Discussions with Witnesses: Category Nos. (71) to (75).**

(U) The defense also seeks to give notice that it may wish to have discussions with witnesses

concerning classified information. The defense may not currently disclose classified information to

any unauthorized persons, including journalists or others, by the terms of the protective orders

---

including, but not limited to, potential alternate sources for disclosure regarding Covert Officer A
and Officer B. Additionally, the defense intends to use and disclose findings within the
investigation, including the reports and analysis determinations, as to whether the classified
information was publicly available prior to or at the time of the alleged disclosures. Also within
the confines of Reference Number 69, the defense intends to question and potentially use at trial
the statements of those named within the filing indicated, including Covert Officer A and Officer
B, as to the perceived effects of their inclusion in the filing." (Defense Letter at 1-2). Rather
than rendering its notice more specific, the defendant made the notice more vague, drawing
within its scope "facts developed during the investigation of the filing," without limitation.

███████████████████

■■■■■■■■■■■■■■■■

entered in this matter and the non-disclosure agreements that defense counsel have executed.

(U) Regarding No. (71), the defense advises that it wishes to discuss classified information with "various members of the media" and with John Sifton, the investigator to whom Journalist A conveyed the name of Covert Officer A. The notice is overbroad and non-specific. It is also impermissible to disclose classified information to unauthorized persons, including the media.

(U) Regarding No. (72), the defense advises that it wishes to disclose "methods with which non-CIA individuals were able to discover the identities of" Covert Officer A and Officer B. The only specified record is the deposition of John Sifton, who (contrary to defendant's characterization) testified that he was *unable* to identify either Covert Officer A or Officer B before Journalist A provided him identifying information. (*See* MAIN_001-000476-78, MAIN_001-000490-92, MAIN_001-000497, MAIN_001-000499). Nonetheless, in the deposition, Sifton describes general techniques he has used to attempt to identify CIA employees, *e.g.*, searching for persons using APO addresses and having addresses in Northern Virginia. The government intends to elicit testimony from Sifton at trial, including how he was unable to locate Covert Officer A and Officer B before Journalist A provided his name. Sifton's efforts to discover other possible officers are irrelevant. To the extent that the defense intends to elicit testimony similar to or beyond that contained within the Sifton deposition, the defense needs to specify particular portions or documents so that a classification review may be performed.

(U) Regarding No. (73), the defense advises that may wish to interview or call as a witness Officer B at trial. The government has provided defense counsel with the name of Officer B's legal counsel. To the extent that the defense intends to elicit testimony, on direct or cross-examination,

■■■■■■■■■■■■■■■■

███████████████████

from Officer B at trial, the defense must provide specific notice of the information it intend to elicit so that classification can be determined. The current notice is insufficient.

(U) Regarding Nos. (74) and (75), the defense advises that it may call various expert witnesses. The current notices are insufficient under CIPA and lack the detail and specificity required to assess the classification of the anticipated testimony. To the extent the defense may seek to offer expert testimony at trial, the government also requests expert notice under Federal Rule of Criminal Procedure 16(b)(1)(C), in addition to that notice required under CIPA.

### (U) IV. CIPA Section 6 Notice and Request for Hearing

(U) As noted above, with respect to certain identified categories, the defendant's notice is inadequate. With respect to those categories, the government respectfully requests that the Court find than no hearing pursuant to CIPA Section 6 is warranted and enter an order barring the defendant from using such evidence.

(U) With respect to the remaining categories, and any categories for which the Court deems the defendant's notice to be sufficient, the government respectfully requests that the Court conduct a hearing to make "all determinations concerning the use, relevance or admissibility" of the proposed defense evidence. See 18 U.S.C. App. III § 6(a). The government requests that the hearing be held in camera. To the extent possible in light of the lack of particularity in the defendant's pleading, the government has identified the classified information that will be at issue at this hearing, pursuant to CIPA Section 6(b)(1), in the foregoing response, including by identifying pages that are not in fact classified, and by its classification markings on the identified reports and documents. Prior to the hearing, the United States will file the requisite certification, as provided by CIPA Section 6(a), that

███████████████████

34

██████████████████

a public proceeding may result in the disclosure of classified information.

Respectfully submitted,

Neil H. MacBride
United States Attorney

Mark E. Schneider/ Iris Lan/ Ryan Fayhee
Special Attorneys to the Attorney General

By:    _____/s/_____
W. Neil Hammerstrom, Jr.
Assistant United States Attorney

Dated:  September 26, 2012

██████████████████