**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **UNITED STATES OF AMERICA** <br><br> **vs.** <br><br> **JOHN C. KIRIAKOU,** <br><br>           **Defendant.** | **Case No. 1:12cr127** <br> **(Hon. Leonie M. Brinkema)** |

**NON-PARTY JOURNALIST "A"'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO QUASH DEFENDANT'S SUBPOENA**

Pursuant to Fed. R. Crim. P. 17(c)(2) and this Court's Order dated October 1, 2012, non-party Journalist "A" respectfully submits this memorandum of points and authorities in support of his Motion to quash Defendant John C. Kiriakou's subpoena seeking pre-trial deposition testimony in this matter.[1] In light of the fact that (a) any conceivably relevant testimony is protected by privilege under the First Amendment, (b) Mr. Kiriakou cannot meet the high burden necessary to overcome that privilege and (c) the nature of the deposition request itself seeks oral disclosure of classified information regarding which Journalist "A" would invoke his Fifth Amendment right against self-incrimination, the subpoena should be quashed.

**BACKGROUND**

A five-count indictment was returned by a grand jury on April 5, 2012, charging Mr. Kiriakou with violating 50 U.S.C. § 421 (a)(disclosure of information identifying a covert

---

[1] The true identity of Journalist "A" is disclosed in Reference No. 71 of the Defendant's CIPA Section 5 Notice.

agent), 18 U.S.C. § 793(d)(disclosure of national defense information), and 18 U.S.C. § 1001

(a)(l)(trick or scheme to conceal a material fact). Indictment [dkt. #22].

As described in an earlier decision by the Court in this case, as it relates to Journalist "A":

> In Counts I and II, Kiriakou is charged with disclosing to a journalist ("Journalist A") the identity of a covert CIA officer ("Covert Officer A") as well as the fact that Covert Officer A was a branch chief in a particular CIA office and was associated with the CIA's Rendition, Detention, and Interrogation Program (the "RDI program"). Specifically, on July 11, 2008, Kiriakou allegedly informed Journalist A that Covert Officer A had been his branch chief in a particular office, and on August 19, 2008, he emailed Journalist A the first and last name of Covert Officer A, stating that "[i]t came to me last night." See Indictment Count I ¶¶ 3(a), 6. Covert Officer A's association with the CIA had been classified for more than twenty years and his involvement with the RDI program was also classified. Indictment ¶ 11.

> In Counts III and IV, Kiriakou is charged with disclosing to Journalist A and another journalist ("Journalist B") the association of a non-covert CIA employee ("Officer B") with the RDI program and the CIA's March 2002 RDI operation to capture terrorism suspect Abu Zubaydah. See id. ¶¶ 10, 12.

> ….

> Count IV alleges that on November 12, 2007, Kiriakou provided the personal email address of Officer B to Journalist A. Id. Count IV ¶ 3. Then, in an email dated May 17, 2008, Journalist A questioned Kiriakou about enhanced interrogation techniques, asking, "[i]n [Country X] and then in [another specific country], was [first name of Officer B] trained to do the techniques, or was he just asking the questions as the heavies were doing the various techniques[?]" Id. ¶ 4. Three days later, Kiriakou responded that "[First name of Officer B] was not trained in the enhanced techniques. He was simply there to ask the questions that the analysts had posed....Your assertion on individual roles is correct." Id. (alteration and omission in original). On November 12, 2008, Kiriakou allegedly again confirmed to Journalist A that Officer B was associated with the RDI program. Id. ¶ 5.

United States v. Kiriakou, 2012 U.S. Dist. LEXIS 112393, *5 - *7 (E.D.Va. Aug. 8, 2012).

On September 28, 2012, Mr. Kiriakou filed a Motion for Rule 15 Depositions [dkt #76](the

document was unsealed on October 9, 2012)("Def's Rule 15 Mot."). Based on an Order entered

by the Court on October 1, 2012 [dkt. #79], Mr. Kiriakou served a subpoena upon Journalist "A"

on October 2, 2012, commanding that he appear to testify at a deposition in a sealed proceeding on October 24 at 9:30 a.m. The subpoena does not specify the scope of testimony sought from Journalist "A".

This Motion to Quash is hereby submitted in response. Oral arguments are set for October 18, 2012.

## ARGUMENT

Depositions in criminal cases are disfavored. United States v. Jefferson, 594 F. Supp. 2d 655, 664 (E.D.Va. 2009), citing United States v. Drogoul, 1 F.3d 1546, 1551 (11th Cir. 1993). As a result, depositions are permitted only "because of exceptional circumstances and in the interest of justice" in order to "preserve testimony for trial." Fed. R. Crim. P. Rule 15(a)(1). The Fourth Circuit has interpreted "'exceptional circumstances' as requiring the moving party to establish at least that the witness will likely be unavailable to testify at trial and that the witness's testimony is material." See United States v. McHan, 101 F.3d 1027, 1037 (4th Cir. 1996). Mr. Kiriakou cannot meet this high threshold and the burden is on him at this stage to demonstrate otherwise.[2]

Additionally, the subpoena should be quashed on at least three other grounds: (1) it seeks information protected by a reporter's First Amendment privilege, (2) Mr. Kiriakou cannot demonstrate the necessary burden to overcome that privilege, and (3) the deposition seeks the disclosure of classified information that if admitted could incriminate Journalist "A" in violation of his 5th Amendment right against self-incrimination. These grounds, which have not been

---

[2] The stated conditions are not meant to exhaust the meaning of "exceptional circumstances" nor end the analysis. "A district court must further carefully consider all the circumstances and exercise its discretion to ensure that Rule 15(a) depositions are permitted only in the rare instances or exceptional circumstances contemplated by the Rule." Jefferson, 594 F. Supp. 2d at 665 fn. 9.

properly fleshed out in Mr. Kiriakou's Rule 15 Motion, are further analyzed below for the Court's consideration.

## I.  ANY RELEVANT TESTIMONY JOURNALIST "A" WOULD CONCEIVABLY PROVIDE IS SUBJECT TO THE REPORTER'S PRIVILEGE[3]

As this Court has noted before in United States v. Sterling, 818 F. Supp. 2d 945 (E.D. Va. 2011), "the Fourth Circuit recognizes a qualified First Amendment reporter's privilege that may be invoked when a subpoena either seeks information about confidential sources or is issued to harass or intimidate the journalist." Id. at 951. See e.g., Ashcraft v. Conoco, Inc., 218 F.3d 282, 287-88 (4th Cir. 2000); LaRouche v. Nat'l Broad. Co., 780 F.2d 1134, 1139 (4th Cir. 1986). The Fourth Circuit has emphasized that the reporter's privilege exists because it is "necessary to ensure a vital and free press, without which an open and democratic society would be impossible to maintain." Ashcraft, 218 F.3d at 287.

"Courts have long held that the reporter's privilege is not narrowly limited to protecting the reporter from disclosing the names of confidential sources, but also extends to information that could lead to the discovery of a source's identity." Sterling, 818 F. Supp. 2d at 851, citing Miller v. Mecklenburg Cnty., 602 F. Supp. 675, 679 (W.D.N.C. 1985)(recognizing "a qualified privilege under the First Amendment for the reporter both against revealing the identity of confidential sources and against revealing material that is supplied to the reporter by such confidential source.")(emphasis in original); Los Angeles Memorial Coliseum Comm'n v. Nat'l

---

[3] It can also be argued that there exists a federal common law reporter's privilege. The Fourth Circuit, however, has only mentioned a common law privilege in United States v. Steelhammer, 539 F.2d 373 (4th Cir. 1976), which involved a civil contempt proceeding. It has never applied the common law privilege in a criminal case. Although other circuits have recognized such a privilege under federal common law, see e.g., Riley v. City of Chester, 612 F.2d 708, 714-15 (3d Cir. 1979)(recognizing federal common law reporter's privilege), because the Fourth Circuit has not done so Journalist "A" will rely on application of the reporter's privilege under the First Amendment.

Football League, 89 F.R.D. 489, 491 (C.D. Cal. 1981)(quashing subpoena to reporters for "any and all notes, file memoranda, tape recordings or other materials reflecting" conversations with listed individuals); Loadholtz v. Fields, 389 F. Supp. 1299, 1303 (M.D. Fla. 1975)("The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants."). See also Church of Scientology Int'l v. Daniels, 992 F.2d 1329, 1335 (4th Cir. 1993)(upholding order denying motion to compel production in defamation action of "all materials relating to" meeting between on-the-record source and *USA TODAY* editorial board).

The ability of the press to freely report on matters of public interest, particularly in the politically and emotionally charged arenas of national security, foreign relations and counterterrorism is essential to maintain. "If reporters were routinely required to divulge the identities of their sources, the free flow of newsworthy information would be restrained and the public's understanding of important issues and events would be hampered in ways inconsistent with a healthy republic." Ashcraft, 218 F.3d at 287. See Declaration of Journalist "A" at *passim* (dated October 10, 2012), attached at Exhibit "1". Additionally, a reporters' ability to secure the trust of their sources — whether confidential or non-confidential — requires the public to hold a perception of reporters as agents of an independent and unfettered news media unconnected to governmental or other outside interests. For any party, and particularly in a criminal case, to attempt to use a reporters' testimony in order to convert the journalist into an investigative tool for one side or the other, would discourage potential sources from talking to journalists and would have the perverse effect of restricting the amount of information that would otherwise be made available to the public. Id.

In the instant matter it is not entirely clear what specific information Mr. Kiriakou intends to seek from Journalist "A". The subpoena, as previously noted, fails to identify the scope of the intended questioning. Nevertheless, it appears from Mr. Kiriakou's Motion for Rule 15 Depositions that he desires to ascertain whether Journalist "A" "had other, independent sources for the classified information allegedly disclosed by Mr. Kiriakou." Def's Rule 15 Mot. at 3.[4] Any relevant testimony that Mr. Kiriakou might seek to elicit would be subject to the reporter's privilege, precisely because the questioning would intrude into confidential reporting information and confidential sources.

As this Court recently held in a parallel criminal prosecution that the Government is pursuing under similar statutory provisions, *any* information about a journalist's reporting methods or work product, "including the time and location of his contacts with confidential source(s), is protected by the qualified reporter's privilege because that testimony could help . . . establish the identity of [his] source(s) by adding or eliminating suspects." Sterling, 818 F. Supp. 2d at 955. As there is no question that the reporter's privilege attaches in these circumstances, Mr. Kiriakou

---

[4] The scope and substance of the expected testimony is a crucial factor for the Court to consider. In the Rule 15 context, "materiality has the same meaning the Supreme Court gave the term in Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, namely, that the evidence or testimony must be exculpatory, and not corroborative or cumulative of other evidence." United States v. Rosen, 240 F.R.D. 204, 209 (E.D. Va. 2007)(citation, internal quotation marks, and footnote call number omitted). The materiality analysis therefore requires examining the forecasted testimony of the proposed deponent "to ascertain (i) whether it is exculpatory, *i.e*., tends to negate an element of the crime or to establish a defense, and (ii) whether it is cumulative of other evidence." Id. Determining whether forecasted testimony is exculpatory involves three steps: first, identifying the elements of the crime; second, outlining the forecasted testimony; and third, comparing "the elements and the forecasted testimony to ascertain whether the forecasted testimony negates any element of the charged crime or establishes a defense." Id. Then, if a prospective deponent's forecasted testimony would be exculpatory, it is necessary to consider "whether it is cumulative of other existing and available evidence." Id. at 210. Based on the factual record as it is known, it does not appear Mr. Kiriakou can meet this criteria.

is required to demonstrate to the Court that he can make the heavy showing required to overcome the invocation of the privilege. Id.

## II. DEFENDANT KIRIAKOU CANNOT MAKE THE SHOWING NECESSARY TO OVERCOME THE PRIVILEGE

Although the reporter's privilege is qualified rather than absolute, the Court is nonetheless required to balance the First Amendment interests of the journalist and the public against countervailing interests of whichever litigant is seeking the reporter's testimony. The Fourth Circuit has articulated three factors that should be considered in what is otherwise a case-by-case analysis: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." LaRouche, 780 F.2d at 1139, accord Sterling, 818 F. Supp. 2d at 953. The party seeking the material protected by the journalist's privilege bears the burden of showing that the balance favors disclosure. See id. at 959 (holding that government had failed to meet burden of proving that balance favored compelled disclosure), Daniels, 992 F.2d at 1335 (affirming privilege ruling because party seeking disclosure "failed to make the required showing for a need for the privileged materials"). Respectfully, Mr. Kiriakou cannot meet the necessary burden and his subpoena should be quashed.

First, Mr. Kiriakou must demonstrate to the Court's satisfaction that the information he seeks from Journalist "A" is relevant to his defense of the charges against him. As previously noted, the subpoena itself contains no statement of the scope of testimony sought, nor has Mr. Kiriakou offered to identify or limit the scope of such testimony. Obviously, it is *possible* that some information in the possession of Journalist "A" would be "relevant" to the defense. But without a detailed proffer from Mr. Kiriakou as to what he believes Journalist "A" would testify about the

7

Court is unable to judge the relevance of the testimony. Therefore, Mr. Kiriakou cannot meet his required burden.

Second, Mr. Kiriakou must also show that there are no alternative means for him to obtain the information he seeks. In this regard, Mr. Kiriakou should be required to disclose, at least to the Court and to Journalist "A" (and perhaps even to the government in the public record), what he plans to prove at trial in order to defeat the charges against him, and to point specifically to what evidence Journalist "A" could provide that is *necessary* to that plan and would only be supplied by him. See Sterling, 818 F. Supp. 2d at 958 (criticizing government, which had issued subpoena to journalist, for failing to have "provided the Court with a summary of its trial evidence, and [to have showed] that summary contained holes that could *only* be filled with [the reporter]'s testimony")(emphasis added). In the absence of such a showing, as this Court has recently held in a similar situation, this factor weighs heavily in favor of sustaining the privilege and quashing the subpoena. Id.

Finally, Mr. Kiriakou must establish a "compelling interest" in the testimony he seeks. To do so, he must show that the testimony is "necessary or, at the very least, critical to the litigation at issue." Sterling, 818 F. Supp. 2d at 959. See also Daniels, 992 F.2d at 1335 (affirming denial of motion to compel production of journalistic work product because the information was not "critical to the case, as the law requires"); In re Petroleum Products Antitrust Litig., 680 F.2d 5, 7 (2d Cir.1982)(to overcome journalist's privilege, information must be, *inter alia*, "highly material and relevant, [and] necessary or critical to the maintenance of the claim"); Miller v. Transamerican Press, Inc., 621 F.2d 721, modified, 628 F.2d 932 (5th Cir.1980)(reporter's privilege may be overcome only where information sought "is necessary to proper preparation and presentation of the case").

In other words, Mr. Kiriakou must show that Journalist "A"'s testimony would, in fact, be exculpatory and not cumulative of other evidence. If he cannot do so, his subpoena must be quashed.

## III.  JOURNALIST "A" WILL INVOKE HIS FIFTH AMENDMENT RIGHT TO REFUSE TO ANSWER ANY QUESTIONS THAT COULD ELICIT CLASSIFIED INFORMATION

Mr. Kiriakou explicitly informed this Court that he "intends to elicit answers from [Journalist "A"] that are expected to include classified information." Def's Rule 15 Mot. at 4. As a result, the answers that Journalist "A" would provide would, based on pronouncements and arguments asserted by the Government as to its interpretation of 18 U.S.C. § 793 (disclosure of national defense information), conceivably subject him to prosecution. Effectively, forcing Journalist "A" to testify would render him a co-conspirator.

It was not long ago in this very District that the United States Government sought to aggressively prosecute two individuals who, like Journalist "A", had absolutely no privity to any agency of the United States or legal obligation to protect classified or national defense information. Yet one or both of them were charged with conspiring to transmit information relating to the national defense to those not entitled to receive it, in violation of 18 U.S.C. § 793(g), and with aiding and abetting the transmission of information relating to the national defense to one not entitled to receive it, in violation of 18 U.S.C. § 793(d). See e.g., United States v. Rosen, 445 F. Supp. 2d 602 (E.D.Va. 2006)(upholding constitutionality of provisions as applied). While the prosecution ultimately failed following years of tortuous and expensive litigation, there is nothing to stop the United States Government, and the current Administration in particular has been more aggressive than any other in history combined, from making another attempt, especially since Journalist "A" does not reside within this District or Circuit.

The Self-Incrimination Clause of the Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself. . . ." U.S. Const. amend. V. See also Pillsbury Co. v. Conboy, 459 U.S. 248, 256-57 (1983)(court cannot compel a party in a civil action "to answer deposition questions over a valid assertion of his [or her] Fifth Amendment right, absent a duly authorized assurance of immunity at the time."). Journalist "A" is entitled to invoke the privilege in a deposition authorized pursuant to Rule 15(a) to the extent he "reasonably believes that the information sought, or discoverable as a result of his testimony, could be used in a subsequent state or federal criminal proceeding." United States v. Balsys, 524 U.S. 666, 672 (1998). Based on the existence of the Rosen case, which involved oral disclosures, there is every reason to believe any disclosure by Journalist "A" of classified information, as intended by Mr. Kiriakou, will subject him to a subsequent federal criminal proceeding. Therefore, he will invoke his Fifth Amendment right to remain silent. Given that the Fourth Circuit has held that "circumstances indicating that a potential witness will refuse to testify may support a decision not to compel disclosures sought by the defense," United States v. Moussaoui, 382 F.3d 453, 472 (4th Cir. 2004), the subpoena should be quashed.

Additionally, the fact that Journalist "A" will invoke his right against self-incrimination based on Mr. Kiriakou's stated intent to seek disclosure of classified information swings this Court back to the materiality factor. As this Court noted in Jefferson, 594 F. Supp. 2d at 669, "it seems clear that there must be at least some credible, reliable basis to believe that the witness would testify as forecasted before a Rule 15 deposition can be authorized." Cf. United States v. Liner, 435 F.3d 920, 924 (8th Cir. 2006)(affirming district court's denial of defendant's motion for a Rule 15 deposition because defendant had "offered no evidence to support his claim" that the witness might provide exculpatory testimony). Hence, the party seeking to depose a witness

10

must make a plausible, credible showing both (i) that the witness will waive any right to remain silent and provide testimony in a deposition and (ii) that such testimony would be along the lines forecasted by the party seeking the deposition. Here, even if Mr. Kiriakou could satisfy the second requirement, he would fall short on the first.

Therefore, Mr. Kiriakou's subpoena of Journalist "A" should be quashed.

## CONCLUSION

Based on the foregoing, Mr. Kiriakou's subpoena to Journalist "A" should respectfully be quashed.

Date:   October 11, 2012

/s/  George R. A. Doumar
George R. A. Doumar, Esq.
(Va. Bar #26490)
Doumar Martin PLLC
2000 N. 14th Street, Suite 210
Arlington, VA 22201
Tel:  (703) 243-3737
Fax: (703) 524-7610
gdoumar@doumarmartin.com
Attorneys for Journalist "A"

/s/  Mark S. Zaid_____
Mark S. Zaid, Esq.
*Pro Hac Vice Pending*
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Tel: (202) 454-2809
Fax: (202) 330-5610
Mark@MarkZaid.com
Attorneys for Journalist "A"

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October 2012, I served the foregoing filing on the

following via e-mail via the ECF system:

> Lisa L. Owings
> Lisa.owings@usdoj.gov
> Assistant United States Attorney
> Office of the United States Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
>
> Iris Lan
> Iris.lan@usdoj.gov
> Assistant United States Attorney
> Office of the United States Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
>
> Mark E, Schneider
> Mark.schneider@usdoj.gov
> Assistant United States Attorney
> Office of the United States Attorney
> 2100 Jamieson Avenue
> Alexandria, Virginia 22314
>
> Ryan P. Fayhee
> ryan.fayhee@usdoj.gov U.S.
> Department of Justice
> Trial Attorney
> Counterespionge Section
> 600 E Street, N.W.
> Washington, D.C. 20004
>
> Kevin T. Baine
> kbaine@wc.com
> William L. Doffermyre
> wdoffermyre@wc.com
> WILLIAMS & CONNOLLY LLP
> 725 Twelfth Street, N.W.
> Washington, D.C. 20005

12

Robert Trout
rttout@troutcacheris.com
Plato Cacheris
pcachcris@troutcacheris.com
John Hundley
jhundley@troutcachcris.com
Jesse Winograd
 jwinograd@troutcacheris.com
TROUTCACHERlS, PLLC
1350 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20036

Mark J. MacDougall
mmacdougall@akingum.com
AKIN GUMP STRAUSS HAUER  & FELD, LLP
1333 New Hampshire Avenue, N.W.


/s/  George R. A. Doumar
George R. A. Doumar, Esq.
(Va. Bar #26490)
Doumar Martin PLLC
2000 N. 14th Street, Suite 210
Arlington, VA 22201
Tel:  (703) 243-3737
Fax: (703) 524-7610
gdoumar@doumarmartin.com
Attorneys for Journalist  "A"