REDACTED / CLEARED FOR PUBLIC RELEASE

Filed with Classified
Information Security Officer

CISO _____

Date __10__/__3__/__2012__

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Criminal No. 1:12-cr-00127-LMB |
| | ) |
| JOHN KIRIAKOU, | )   **Filed In Camera and Under Seal** |
| | )   **with the Classified Information** |
| Defendant. | )   **Security Officer** |

### (U) REPLY TO GOVERNMENT'S RESPONSE
### TO DEFENDANT'S CIPA SECTION 5 NOTICE

(U)  Pursuant to Section 5 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C.

App. III, and this Court's August 8, 2012 CIPA Scheduling Order (Dkt. 61), Defendant John

Kiriakou, through counsel, filed a CIPA Section 5 Notice ("CIPA Notice") on September 12,

2012.  On September 26, 2012, the Government filed a Response to Defendant's CIPA Section 5

Filing ("Response" or "CIPA Response"), raising various challenges to the CIPA Notice.  Mr.

Kiriakou respectfully files this Reply to address the government's Response.[1]

### (U) RESPONSE TO GENERAL OBJECTIONS

(U) The government's Response to Mr. Kiriakou's CIPA Notice is premised upon a basic

mistake: throughout its Response the government appears to contend that the CIPA Notice is

deficient because it does not specify the exact document or witness through which Mr. Kiriakou

---

[1] (U) During the sealed hearing on October 1, 2012, the Court instructed the parties that it would take up any remaining outstanding discovery issues during the hearing already scheduled as to the CIPA Notice.  As such, Mr. Kiriakou notifies the Court that he has not received responses to two discovery letters, one dated September 12, 2012 (Exhibit A) and one dated September 17, 2012 (Exhibit B).  Within its Response, the government has stated its position as to the relevance of the majority of the requested information and Mr. Kiriakou has responded

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

will present the evidence at trial. *See, e.g.,* Response at 14 (claiming that specified information is hearsay because the defense has failed to say which witness would be used to elicit the information described); *id.* at 15 ("But this category fails to designate any particular public record or document"); *id.* at 22 (arguing that the defense has not specified exactly which information contained in cables listed in the CIPA Notice it plans on introducing). CIPA, however, does not require Mr. Kiriakou to provide witness and exhibit lists or outlines of witness testimony. Rather, CIPA § 5 "requires a *general* disclosure as to what classified information the defense expects to use at trial, *regardless of the witness or the document through which the information is to be revealed.*" *United States v. Poindexter*, 725 F. Supp. 13, 33 (D.D.C. 1989) (emphasis added).

(U) Mr. Kiriakou has provided categories of classified information he expects to disclose, descriptions of classified information within those categories, and even corresponding examples from the government's own discovery for the majority of the descriptions. Under CIPA, Mr. Kiriakou is not required to lay out his full and exact trial strategy to the prosecution—e.g. which witnesses he will call and for what propositions, how he will cross-examine each potential government witness, how he will enter documents or other information into evidence, and what evidence he is certain to use. *United States v. Lee*, 90 F. Supp. 2d 1324, 1328 (D.N.M 2000) ("CIPA also does not require that the defendant reveal what questions his counsel will ask, in which order, and to which witnesses. Likewise, the defendant need not attribute the information to any particular witness."). The particularization the government seeks is not statutorily required and improperly intrudes into Mr. Kiriakou's trial strategy. If Mr. Kiriakou does not establish a proper foundation for a piece of evidence at the time of trial, the Court may, of course,

---

herein. To the extent the Court would like further details or argument, defense counsel will be prepared to address those matters on the record during the hearing on October 10, 2012.

2

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

exclude such evidence. By requiring that Mr. Kiriakou explain precisely which witnesses he will use to admit pieces of evidence, the government is impermissibly attempting to have Mr. Kiriakou try his case before a jury is even empanelled.

(U) Despite the government's contention that the defense is disclaiming the need to argue relevance, the defense notes only that the CIPA Notice is not deficient because it does not explain the relevance of the information listed. "CIPA section five does not require a defendant to provide detailed argument in support of the relevance of particular noticed documents in the notice itself." *United States v. Rewald*, 889 F.2d 836, 855 (9th Cir. 1989) (determining the district court to be mistaken that the CIPA § 5 notice was the primary vehicle for addressing the relevance of the documents). If the government wishes to challenge the admissibility and relevance of the noticed classified information, it may do so at a Section 6 hearing, but such arguments are not bases for finding the CIPA Notice itself insufficient. *See United States v. Smith*, 780 F.2d 1102, 1105 (4th Cir. 1985) ("Once the defendant gives notice of his intention to introduce classified information, the United States may request a hearing at which the court shall determine the 'use, relevance, or admissibility of classified information that would otherwise be made during the trial or pretrial proceeding.'") (quoting 18 U.S.C. App. III § 6).

(U) As to the relevance of the information the defense anticipates disclosing at trial, Mr. Kiriakou is entitled to present a theory of defense to the jury. This theory may involve relevant evidence that the government would prefer not to be disclosed, but here, the classified information noticed (1) undercuts elements of the government's case, or (2) allows Mr. Kiriakou to provide his narrative of the alleged events to the jury. As such, the noticed classified information is not only relevant but critical to Mr. Kiriakou's defense. Evidence is relevant if it

3

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in deciding the action. *See* Fed. R. Evid. 401. "The Constitution requires that a criminal defendant be given the opportunity to present evidence that is relevant, material and favorable to his defense." *United States v. Saunders*, 736 F. Supp. 698, 703 (E.D. Va. 1990). The right to present a defense includes "'at a minimum the right to put before a jury evidence that might influence the determination of guilt.'" *United States v. Lighty*, 616 F.3d 321, 358 (4th Cir. 2010) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987)). Even in a case involving CIPA a defendant is entitled to the disclosure of classified information, despite government objections, if the evidence is "either relevant and helpful to the defense or essential to a fair determination of a cause." *United States v. Moussaoui*, 382 F.3d 453, 472 (4th Cir. 2004).

(U) The CIPA Notice complies with the statutory requirements because Mr. Kiriakou has informed the government of the classified information he "reasonably expects to disclose." 18 U.S.C. App. III § 5. The defense submits that the information contained in the CIPA Notice is sufficiently particularized to inform the government and this Court about what classified information the defendant reasonably expects to disclose at trial, and is even more specific than statutorily required. *See United States v. Fernandez*, 913 F.2d 148, 152-153 (4th Cir. 1990) (describing CIPA § 6 hearings on various *categories* of information) (emphasis added).

## (U)   RESPONSE TO OBJECTIONS TO SPECIFIC NOTICED CLASSIFIED INFORMATION

(U) Mr. Kiriakou addresses the government's objections to the noticed seventy-five items of classified information in turn below.

4

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

(U) **I.  PRB**

(U) As an initial matter, the government has mischaracterized the meeting held among counsel on September 18, 2012. While the defense did not change the scope of its notice, it did orally elaborate and provide specific examples regarding noticed items that the government inquired about during the meeting.[2] The government contends that the defense "enlarged its request" with respect to the PRB items, but that is not the case. The government inquired as to the significance of the bates numbers and why Item No. 1 did not include any bates numbers. The defense explained that Item No. 1 was intended as a catch-all in case a portion of the PRB file was not separately noticed in Item Nos. 2-16, and that the defense intended to introduce the whole PRB file. The letter sent subsequent to the meeting simply memorialized that statement so that the clarification of bates numbers within the PRB category would not be misconstrued as some change in position.

(U) At the outset of its Response to the PRB category of the CIPA Notice, the government admits that several of the documents contained in the defendant's filing are unclassified. While the documents to which the government refers may not be classified, they are contained on a password-protected CD that as a whole has been deemed classified, and which the defense may only view in Sensitive Compartmentalized Information Facility ("SCIF").[3] In order to avoid a

---

[2] (U) The defense needed to confer with counsel not present at the meeting before providing any further comment on Item No. 69. As a result, a brief letter was sent to the government regarding Item No. 69 and the correction of some discrepancies in listed bates number ranges also requested by the government during the meeting.

[3] (U) This is illustrative of problem that runs thematically through this litigation; the government has shifted the burden of deciding what and what is not classified to the defense. As outlined during the sealed hearing on October 1, 2012, the defense will work with the Classified

5

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

later challenge to entry of PRB evidence, Mr. Kiriakou noticed this intended evidence out of an abundance of caution. Based upon the government's confirmation that the documents identified on pages 10-12 of the CIPA Response are unclassified, Mr. Kiriakou agrees that evidence is not subject to the procedures set forth under CIPA.

(U) As to the other information noticed under the PRB heading of the CIPA Notice that remains at issue—namely Item Nos. 7 to 10, 12, 13, and 31—the government contends that Mr. Kiriakou's dealings with the PRB before and after the alleged false statement are irrelevant. Contrary to the government's position that only limited documents and correspondence regarding the PRB's review of Mr. Kiriakou's book are relevant to this case, the entirety of the PRB file, including the draft manuscripts and government mark-ups, are relevant to this case. For example, Mr. Kiriakou's course of dealing with the PRB demonstrates his lack of criminal intent. Mr. Kiriakou went through years of revisions to assure that his book could be published. Before, during, and after PRB review of Mr. Kiriakou's book manuscript, Mr. Kiriakou sought permission from the PRB to publish editorials and give speeches. This course of dealing with the PRB is directly relevant evidence that Mr. Kiriakou did not "willfully" make a false statement to the PRB, which is an essential element the government must prove at trial. *See United States v. Oceanpro Industries, Ltd.*, 674 F.3d 323, 328-29 ("A conviction under §1001 thus requires the government prove ... that the statement was made knowingly and willfully.")

(U) The course of dealing with the PRB also demonstrates the problem of overclassification and its implications on Mr. Kiriakou's state of mind as to Counts 2 through 4. As the defendant has argued since he filed his pre-trial motions in June, the issue of overclassification could leave

---

Information Security Officer to determine what pages of the government's discovery may be taken out of the SCIF.

6

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

an individual without the ability to determine what is legitimately classified and what is not. The classification authorities at the PRB even argued amongst themselves about what information in Mr. Kiriakou's manuscript was legitimately classified. The PRB initially told Mr. Kiriakou that his entire book was classified, then allowed him to publish an edition three years later that contained much of the information initially deemed classified. Under the government's interpretation of 18 U.S.C § 793, the government must show that Mr. Kiriakou "had reason to believe" that the information he allegedly released would cause injury to the United States.[4] The narrative of Mr. Kiriakou's dealings with the PRB---with a myriad of changing classification determinations—directly bears upon Mr. Kiriakou's state of mind as to the arbitrariness of classifications and as to the fact that it does not necessarily follow that the disclosure of information noted as classified is actually classified such that its disclosure would cause injury to the United States.

(U) Finally, the defendant has noticed classified information which the government claims would be impermissible hearsay, Item Nos. 15 and 16. The defense has used information contained in discovery to alert the government to the classified information that it intends to disclose at trial, namely that certain information the government claims was classified, was in fact not. To the extent the government did not understand that the defense would elicit this information through witnesses, the defense places the government on notice that it will call witnesses to properly authenticate any document it plans to introduce, but does not intend to

---

[4] (U) The defense recognizes this Court's October 1, 2012 ruling precludes arguments regarding Mr. Kiriakou's intent to harm the United States or a defense resting on Mr. Kiriakou's lack of bad faith. Several items of classified information the defense included in the initial CIPA Notice rely on that theory. The defense, however, will not use this pleading to attempt to reopen the issue. The defense will note where information would be relevant to such arguments in order to preserve its ability to appeal the issue should that become necessary.

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

provide the government with a witness list any more than the government intends to provide the defense with one.

(U) II. Covert Officer A

(U) No. 33. Contrary to the government's contention that this notice "provides no notice of the content of any testimony," CIPA Response at 15, the description states that Covert Officer A will be called to testify in his true name "regarding the allegations in this case and his interactions with John Kiriakou," CIPA Notice at 9. To the extent this is not specific enough, the defense intends to question Covert Officer A regarding all instances where he operated in his true name, all instances of which he is aware that his true name was publicly used in connection with CIA or government operations, and all instances where he interacted with Mr. Kiriakou. Based upon discovery provided to date, the defense has provided the bates number for one instance in which Covert Officer A has admitted using his true name while carrying out an RDI operation. However, the defense cannot be more specific absent an opportunity to interview Covert Officer A prior to trial. The discovery has opened the door as to whether Covert Officer A himself was taking affirmative measures, as required by 50 U.S.C. § 421, to conceal his identity and affiliation with the CIA and RDI program, and the defense should be allowed to question Covert Officer A—or any other intelligence witness—as to whether Covert Officer A used his true name on other CIA operations.

(U) The government also states that it intends to move to substitute Covert Officer A's true name. At the appropriate time, Mr. Kiriakou will object. On the most fundamental level, potential jurors must be questioned in voir dire regarding any personal knowledge or relationships they may have as to witnesses, including Covert Officer A. Also, the defense may

8

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

introduce a demonstrative search into evidence that will demonstrate that Covert Officer A's relationship with the CIA could be ascertained from public or open source records. As such, Covert Officer A's true name is critical to the defense.

No. 34. The government challenges this item as vague and not particularized, noting that no examples are cited. No examples are cited because the government has not produced documents that address the procedures and protocols for the ⬚ cover assumed by CIA employees. This classified information will be elicited through testimony of Covert Officer A, as well as any other witness with appropriate basis to so testify. Upon information and belief,

The defense will reference ⬚ by name and elicit testimony, as stated in the CIPA notice, as to the meaning of "procedures and practices of declaring agents in their true capacity to foreign entities and agencies." CIPA Notice at 9. Upon information and belief,

. Further, the defense believes that it is the practice of the CIA to declare certain agents to foreign governments as being in the CIA, ⬚

The defense will have witnesses testify to these practices, in whole, because they shed light on the vague terms, such as "affirmative measures" and "covert" contained in 50 U.S.C § 421.

No. 35. As to this item, the government concedes that portions of the True Persona Profile for Covert Officer A are relevant but argues that other portions—specifically, "Covert

9

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

Officer A's name, pseudonym, personal identifying information, cities in which Covert Officer A served"—are not. CIPA Response at 15. Covert Officer A's True Persona Profile contains more relevant information than the government admits. For the reasons discussed in regards to Item No. 33, Covert Officer A's true name is relevant. His pseudonym is also relevant as it directly ties to any affirmative measures that the government took to conceal the identity of Covert Officer A. The defense does not intend to introduce Covert Officer A's social security number or pay information into evidence and would agree to redaction of such information if the physical document (CIA02166-02168) is introduced into evidence. Otherwise, the information contained in the True Persona Profile reflects relevant background information as to Covert Officer A's term of service in the CIA and specific details as to the measures taken regarding Covert Officer A's cover status. Additionally, the locations of Covert Officer A's tours are relevant and particularly probative as to the required elements of (1) affirmative measures to conceal Covert Officer A's identity under 50 U.S.C. § 421(a) and (2) Mr. Kiriakou's reason to believe the alleged disclosures could be used to the injury of the United States under 18 U.S.C. § 793(d). Some of the locations where Covert Officer A served,

are long known to be run by corrupt governments. The disclosure of Covert Officer A's true identity and affiliation with the CIA to government officials in such countries directly negates that the United States was acting to maintain any covert status for Covert Officer A. Further, Mr. Kiriakou's beliefs and impressions as to how classified information was maintained in any of those countries are relevant to the requisite state of mind for Count 2.

(U) **No. 36.** The government's response to this item regarding public records or documents is nonsensical. First, the government confirms that any record connecting Covert Officer A's true

10

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

name with this prosecution would disclose classified information. Then, however, the government contends notice is defective because "any such record or document must be specifically identified to assess its classification, relevance, and admissibility."[5] CIPA Response at 16. As stated above, Mr. Kiriakou is required to provide a brief description of the classified *information* he intends to disclose at trial, not the particular documents. Any evidence that Covert Officer A has been "outed" as to his ties to the CIA or RDI program directly negates the government's contention that Covert Officer A's identity was closely held.

No. 37. The government challenges this item for not specifying "which 'CIA operations' that it intends to offer at trial." CIPA Response at 16. How the government expects the defense to provide more specificity is particularly perplexing considering that Mr. Kiriakou has been provided limited—and often redacted—information as to Covert Officer A's operations. Based upon the discovery provided, the defense intends to question Covert Officer A as to any usage of his true name in his CIA activities prior to the alleged disclosures. Such questioning will likely be framed based upon the locations of Covert Officer A's operations or assignments as that is the information the defense has been provided. The defense cannot control what operational details Covert Officer A will disclose in answering such questioning. Finally, Covert Officer A's use of his true name on CIA operations is relevant to how closely held his identity and connection with the CIA and RDI program were. Such information is particularly relevant regarding                    and an earlier period when Covert Officer A supervised Mr. Kiriakou because these operations relate to direct contact Mr.

---

(U) [5] Since the Court's comments regarding conducting searches of public sources at the October 1, 2012 hearing in this case, the defense has been in consultation with the Classified Information Security Officer regarding methods for the defense to investigate public sources for these public

11

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

Kiriakou had with Covert Officer A. To the extent other witnesses have knowledge of Covert Officer A's use of his true name during CIA operations, the defense intends to elicit their testimony on this issue as well.

(U) No. 38. The government contends that it cannot respond to this item without any specific example of Covert Officer A's use of his true name in his public life and description of his job. The defense intends to question Covert Officer A as to how he identified himself to individuals outside the U.S. intelligence community and how he described his job. Nothing provided in the discovery provides the defense of any indication of Covert Officer A's answers to such questioning. Such testimony is relevant for the same reasons as noted herein for Item No. 36.

No. 39. As to this item, the government gives a detailed argument as to why the                                                        is not relevant. Such argument is based upon the purpose for which                                        . Here, Mr. Kiriakou intends to use the                                        for a different purpose; therefore, the government's argument is of no consequence. The government created and maintained                       thereby generating another means for identifying a covert agent other than by name. Such a document is relevant and probative as to how the United States concealed Covert Officer A's intelligence relationship with the United States.

No. 40. The government agrees as to the relevance of "(1) delimited testimony by Covert Officer A about his interactions with the defendant                                                        (2) portions of the defendant's recorded FBI interview regarding the same event." CIPA Response at 17. While Mr. Kiriakou agrees this enumerated evidence is relevant,

---

documents. As of the time of this filing, no set process has been established for the defense to conduct the variety of searches that it intends to complete.

12

REDACTED / CLEARED FOR PUBLIC RELEASE

—which overlaps with Item No. 37—is also relevant for the reasons stated above. Based upon the discovery, [                    ] Covert Officer A traveled on multiple commercial airlines and stayed at at least one hotel under his true name, filling out travel documentation in his true name. The number of times and locations of such disclosures is relevant and probative as to how closely held Covert Officer A's identity was.

No. 41. Regarding Mr. Kiriakou's inclusion in the CIPA Notice of a Red Notice issued by Interpol regarding Covert Officer A, the government contends that it has yet to locate such a document. Notes from an interview with Covert Officer A indicate that his comment about a Red Notice was not a passing reference; he had been instructed to contact the[                    ] prior to international travel. Such a statement supports the defense's view that some documentation of a Red Notice, or suspicion of a Red Notice, does exist. Nonetheless, Mr. Kiriakou will address how to admit evidence regarding any Red Notice once the requested information is provided. A Red Notice would be relevant to this case because it would (1) show that Covert Officer A's identity was known by a third party and (2) potentially directly link Covert Officer A to the CIA[                    ] Even without additional discovery, Mr. Kiriakou has a good faith basis to question Covert Officer A regarding his knowledge of a Red Notice.

No. 42. As to this item, the government contends that Mr. Kiriakou must "specify precisely what he intends to introduce" as to potential or actual leaks by liaison partners in [                    ] or any other country or entity to which Covert Officer A's affiliation with the CIA was declared or known. CIPA Response at 18. The defense certainly intends to

13

REDACTED / CLEARED FOR PUBLIC RELEASE

question Covert Officer A about his belief that foreign liaison officers, such as those he specifically referenced in his earlier interview, would leak classified information. Such a belief would corroborate potential testimony of Mr. Kiriakou or other intelligence witnesses that foreign governments are widely known not to maintain classified information. This belief is relevant and highly probative as to whether Mr. Kiriakou had reason to believe any alleged disclosure could cause harm to the United States. To the extent any intelligence witness served in a country in common with Covert Officer A, the defense intends to inquire into that witness's knowledge of (1) how U.S. classified information was maintained and (2) any leaks by liaison officers that the witness is aware of.

No. 43. The government argues that the number of individuals with knowledge of Covert Officer A's role in                    is "unremarkable" and irrelevant "[a]bsent some evidence that Covert Officer A's association was publicly acknowledged to persons without a clearance or need to know." CIPA Response at 19. Under 50 U.S.C. § 421(a), the government must prove that it was taking affirmative steps to conceal Covert Officer A's intelligence relationship. Contrary to the government's view, the number of individuals with knowledge of Covert Officer A's intelligence relationship is directly relevant to this element.

(U) No. 44. The government challenges this classified information as irrelevant because "particular liaison activities and relationships are essential to the conduct of foreign intelligence activities and do not constitute a public acknowledgement that would compromise Covert Officer A's cover or the closely held nature of his CIA association." CIPA Response at 19. However, for the reasons set forth herein as to Item No. 35, the countries and agencies to which Covert Officer A was disclosed are relevant.

14

REDACTED / CLEARED FOR PUBLIC RELEASE

(U) **No. 45.** The government contends that the notice in this item is "defective and fails to cite any record or exhibit that the defendant seeks to introduce." CIPA Response at 19. While Mr. Kiriakou disagrees that the notice is defective, no discovery documents were cited because the government has yet to produce this information as requested in a discovery letter dated September 17, 2012 (Exhibit B). As noted in Item No. 48 of the CIPA Notice, U.S. cables containing Covert Officer A's true name have been produced that were transmitted as unclassified. In light of this failure to restrict distribution of government cables connecting Covert Officer A with the United States, it is particularly relevant what, if any, measures the United States took to conceal Covert Officer A's identity in relations with foreign entities.

(U) **No. 46.** The defense currently has not yet located a specific witness for the classified information noticed in this item. If the defense does identify such a witness, the defense will provide additional details if the Court finds the current notice insufficient.

**No. 47.** As to characterizations of Covert Officer A's the government seems to concede relevance but argues that the identity of the particular country or region involved should be excluded. CIPA Response at 20. As noted elsewhere in this Reply, the specific countries and regions where Covert Officer A served are relevant to Mr. Kiriakou's defense.

**No. 48.** While the government takes the view that the noticed cables "conceal the CIA relationship, and are therefore not favorable to the defense," CIPA Response at 20, the government's view of the evidence has no bearing upon the sufficiency of the notice and actually supports the relevance of the information. To the extent the government argues Item No. 48 is irrelevant, Mr. Kiriakou disagrees.

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

At least some of the unclassified cables specifically referenced in Item No. 48

it is rather remarkable that such communications—communications that are formatted for and include a classification designation—do not restrict the dissemination of Covert Officer A's true name

## (U) III. Abu Zubaydah

(U) Contrary to the government's assertions, the classified information in this category is specific and particularized. The government does not have to guess what information will be disclosed. The defense intends to disclose at trial a detailed description of the raid to capture Abu Zubaydah: the names, the places, the participants, the techniques, the words the commanders spoke to their subordinates before the raids began—in short, the entire Abu Zubaydah story. The government continues to insist, in almost every paragraph of its response, that Mr. Kiriakou provide the exact page, paragraph and line of documents listed that he intends to use at trial. As Mr. Kiriakou has already argued, and as CIPA states, the defendant must place the government on notice of what information will be disclosed at trial. Mr. Kiriakou does not have to reveal his entire trial strategy.

16

REDACTED / CLEARED FOR PUBLIC RELEASE

The Abu Zubaydah story is relevant to the charges in the indictment. Despite the government's myopic view that all evidence presented in this case must directly involve ⎯⎯⎯ or Officer B, the defense is entitled to challenge the charges with evidence which undercuts the government's theory⎯⎯⎯

The discovery provided by the government to date makes clear that the government's case-in-chief will involve circumstantial evidence that Mr. Kiriakou provided Journalist B with information regarding Officer B. This evidence will include the assertion that the there were errors in Mr. Kiriakou's book that were replicated in Journalist B's June 22, 2008 article relating to the capture of Abu Zubaydah. Mr. Kiriakou is entitled to disprove this narrative with the true version of the Abu Zubaydah story.

The story of the Abu Zubaydah capture is relevant in another way. The discovery makes clear that the CIA used ⎯⎯⎯⎯ technology during the operation. This technology is related to the "Magic Box." Mr. Kiriakou's exposure to this technology, his knowledge of its functionality in the field, and his understanding of the technology are relevant to the question of whether he knowingly and willfully made a false statement as alleged in Count 5.

No. 49. The government's objection to this item is indicative of its entire approach to Mr. Kiriakou's CIPA Notice, namely that it will make allegations of insufficiency, no matter how specific an item. The notice is specific in that the defense intends to disclose the technical aspects of ⎯⎯⎯ technology. As the CIPA § 5 notice makes clear the defense will disclose the technical aspects of ⎯⎯⎯ technology, how it functioned, and how it was built. The information will be presented to the jury through witnesses with knowledge of that subject.

17

REDACTED / CLEARED FOR PUBLIC RELEASE

Despite the government's contention that this information is irrelevant, this information will be used to refute Count 5 of the indictment. The government has charged Mr. Kiriakou with making false statements to the PRB regarding a "Magic Box." In order for the government to prove that Mr. Kiriakou was knowingly making a false statement, it will have to show that the "Magic Box" was not fictionalized as Mr. Kiriakou claimed. Mr. Kiriakou is entitled to show the jury that the device he described in his book is nothing like the ⬚ technology the government alleges it actually used in the capture of Abu Zubaydah, proof that would negate the essential element of falsity in Count 5.

(U) **No. 50.** As explained above, the defendant intends to give a comprehensive account of the Abu Zubaydah capture. All details of the operation that involved John Kiriakou will come to light, and, as also explained above, this story is not a distraction from the charges to be proved at trial, but evidence that undercuts the proof of the government's case.

(U) **No. 51.** The witnesses Mr. Kiriakou intends to call will give information regarding the operation to capture Abu Zubaydah. The defense has already explained what this information will be and why it will be relevant. Just as in any other criminal case, no rule or statute requires the defense to tell the government which witnesses it intends to call prior to trial, the defense does not have to do so in this case. That would be a substantive change in the law and "no new substantive law [was] created by the enactment of CIPA." *Smith*, 780 F.2d at 1106.

(U) **IV. Mr. Kiriakou's Service to the United States**

The defense maintains that this information undercuts the government's case that Mr. Kiriakou had reason to believe the information could harm the United States. Mr. Kiriakou's participation in various operations and assignments, details of which were constantly shared

18

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

between various individuals, and where Mr. Kiriakou repeatedly interacted with people who were acting under          cover,[6] but whose identities were widely known, bear directly on Mr. Kiriakou's belief that the information he allegedly revealed could be used to harm the United States. The CIPA Notice could not be more specific as to the exact operations because counsel for the defense is not cleared to hear the specific details of these operations. By letter dated September 12, 2012 (Exhibit A), defense counsel requested clearance into the compartments necessary to hear details of these operations, but the government has not responded.[7]

(U) The defendant also notes that he may testify in this case. If the defendant takes the stand he will introduce himself to the jury. This may include portions of his biography which are classified, and as the Court noted during a sealed hearing on October 1, 2012, some of Mr. Kiriakou's background would be admissible in this context. In order to comply with dictates of CIPA, Mr. Kiriakou has informed the government that various portions of his service will be revealed at trial.

(U) **V. Government's Alleged Bias Concerning the Prosecution Decision**

(U) The defense understands that the Court denied the defendant's request to reopen this issue after the filing of the CIPA Notice, and while Mr. Kiriakou is not withdrawing his request nor waiving his objection to the Court's prior rulings on this issue, he is not attempting to re-litigate the arguments regarding selective and vindictive prosecution. With the exception of Item No. 60 that is relevant for other reasons, in order to preserve the record, the defense notes it would have

---

[6]  Covert Officer A operated under          cover for much of his career.

[7] (U)  The defense maintains that Mr. Kiriakou's service is relevant and material to the defense as explained in the defendant's Reply Memorandum in Support of Defendant's Motion to Compel Production of Documents. The defense would use this information to demonstrate that

19

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

relied on these documents, and the information contained in them, if the Court would have allowed further discovery. The defendant does not contest the fact that a claim of selective and vindictive prosecution must be raised prior to trial. CIPA § 5 requires the defendant to place in his notice any classified information he reasonably expects to disclose in connection with "any trial or pretrial proceeding." *Id.* Mr. Kiriakou renewed his request for discovery in this area, and he believes the discovery cited in his pre-trial motions and his Motion to Compel Production of Documents demonstrates that there was indeed a constitutional defect in the decision to prosecute him. Therefore this information was placed in the CIPA § 5 notice.

(U) No. 60. The government notes that the documents in this particular item are unclassified. However, these are not the only documents the defendant seeks to use, as the defendant has sent a letter to the government requesting additional documents relating to this item and has not yet received a response. The information this item notices is directly relevant to whether or not the CIA deemed Officer B's relationship to the RDI program classified. The public affairs office of the CIA wrote a letter to The New York Times and met with employees of The New York Times in effort to stop the paper from publishing Officer B's name. If the reasons did not include that his association with RDI was classified, this would be material evidence that would favor Mr. Kiriakou.

(U) VI. Additional Leaks

(U) Contrary to the government's assertions that the noticed information in this category serves only to demonstrate that additional illegal disclosures were committed in addition to those alleged against Mr. Kiriakou, the noticed items under this heading support that the information

---

Mr. Kiriakou had no intent to harm the United States, and that he had no motive to do so had the Court not ruled such arguments were inadmissible.

20

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

allegedly disclosed was widely known, thus negating any reason to believe any additional disclosure could cause harm to the United States. The government's argument could only be accepted if it is assumed that the allegations in the indictment are true, an assumption that would dispense with the need for a trial. The defense is entitled to test the government's theory by presenting alternative narratives. For instance, much of the information contained in Journalist B's article cannot be found in the email traffic the government has put forth as evidence. This means the government will have to prove Mr. Kiriakou was the source of the other information regarding Officer B in Journalist B's article using circumstantial evidence. The theory that other individuals were the source of this information—which is based upon the discovery provided and the defense's own investigation—is one the defense is entitled to present to the jury. Moreover, as part of its case to prove the § 793 counts, the government must show that Mr. Kiriakou had reason to believe the information he allegedly released would harm the United States. If Mr. Kiriakou believed that the journalists he was allegedly speaking with were already in possession of the information, such evidence tends to show that Mr. Kiriakou did not reasonably believe an alleged disclosure of that information would harm the United States. Such information is therefore relevant.

In response to many of the items listed under the leaks category, the government demands that the defense be more specific regarding which documents the defense intends to introduce yet refuses to give the defense the opportunity to do so. For instance, in the litigation regarding the motion to compel the government objected to producing any documents the defense had requested regarding                              Nonetheless, the government demands the defense give the government information regarding                              it intends to

21

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

use while simultaneously refusing to produce the documents the defense needs to narrow certain items any further.

(U) **No. 61.** The government refers to the conversations listed in this item as "rank speculation." But the defendant is entitled to test that assertion by questioning these witnesses. The defense noted that it intends to interview, and possibly call as witnesses, the individuals who were parties to this conversation as witnesses in this case. To the extent that the defense's discovery request and CIPA § 5 notice have not requested the names of these individuals, the defense now requests them. It is apparent from these documents that there are individuals who believe that it was not John Kiriakou that gave Officer B's name or the descriptions of the "Magic Box" to the media. The defense is entitled to question these witnesses to see if they have any factual basis for these claims and present this story to the jury. Further, these comments support the defense's theory that the classified information reflected in the indictment was widely known outside the intelligence community and those authorized to access it—namely, by the press.

(U) The defense listed similar conversations in Item No. 62. For purposes of this filing the defense assumes the government would make the same objections. The arguments listed under Item No. 61 apply with equal force to Item No. 62.

**No. 63.** (The government's filing lists an objection to Item No. 62, but it appears that objection is directed to Item No. 63. Thus, the Response's paragraphs regarding Item Nos. 62 and 63 both appear to pertain to Item No. 63.) As explained above, the government is demanding more specificity while arguing that it does not have to produce more information. Therefore, the defense cannot specify any documentary evidence it intends to use, because the

22.

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

government has refused to produce such evidence. At the sealed hearing on October 1, 2012, the Court did suggest this information may be relevant because it explained that the defense could question ⬚⬚⬚⬚⬚⬚⬚ regarding his association with ⬚⬚⬚⬚⬚⬚⬚

⬚⬚⬚⬚⬚⬚⬚ The defense cannot be more specific than this ⬚⬚⬚⬚⬚⬚⬚

⬚⬚⬚⬚⬚⬚⬚ The spreadsheet cited provides the government an example of the information regarding the appearance of ⬚⬚⬚⬚⬚⬚⬚ in the public record. As for other public records the defense intends to introduce, it cannot look for them at this time.[8]

(U) **No. 64.** The information contained in this particular item is relevant because it demonstrates an alternative theory of the alleged leaks. The government contends it is irrelevant because it does not fit with its theory of the case. The Abu Zubaydah capture is intimately linked to Journalist B's story about Officer B. This information noticed is relevant because it demonstrates that Journalist B could have other sources besides Mr. Kiriakou. The fact that the information was in the public domain shows Mr. Kiriakou could not have reasonably believed that the information would harm the United States. The information is particularly relevant because the CIA believed the source of the information was the FBI, meaning that the government was not closely holding the information. Mr. Kiriakou is not required to present only the theories the government wants him to, nor is he required to limit his presentation of evidence

---

[8] (U) The defense has been in consultation with the Classified Information Security Officer regarding methods for the defense to investigate public sources for these public documents. As of the time of this filing, no set process has been established for the defense to conduct the variety of searches that it intends to complete.

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

to the characters contained in the indictment; if there is evidence that others leaked information to the media and the evidence demonstrates that these people may have been the sources for Journalist B's information, Mr. Kiriakou is entitled to present that to the jury.

No. 65. The information in this item is relevant because it demonstrates that the public knew that                                                                        . It therefore shows that the public, Mr. Kiriakou, and the journalists referenced in the indictment were aware that Officer B was associated with the RDI program. This public information directly supports a theory that Mr. Kiriakou reasonably believed that any connection between Officer B and the RDI program could not be used to harm the United States. It is also evidence that other individuals were the original source of the connection between Officer B and the RDI program, meaning the information was not closely held. Mr. Kiriakou is not required to accept the government's theory as laid out in the indictment or to assume that all other theories are merely evidence that others committed similar conduct. He is entitled to present evidence to the jury that others leaked the information charged and/or that this information was commonly known. The evidence contained in this item is just such evidence.

(U) As to the government's claim of hearsay, this evidence is not hearsay if it is offered to show Mr. Kiriakou's state of mind. To the extent that it would be offered for the truth, the notice is sufficient to inform the government of the information the defendant intends to disclose at trial through a witness.

(U) Nos. 66 & 67. To the extent these communications demonstrate that Mr. Kiriakou was aware of alternate sources of the information obtained by the journalists in the indictment, they

24

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

go directly to his state of mind regarding his belief that the information could be used to harm the United States and to the notion that the information was not closely held.

No. 68. The relevance of this item has already been explained. Despite no obligation to identify particular witnesses at this juncture, the defense hereby notifies the government that it will call            as a witness regarding issues contained in the bates numbers cited. Most notably the defense will question            regarding his contract with the CIA, which employees he used to fulfill the contract, and his understanding of the public's knowledge of his                                                                    will presumably testify, consistent with his statement of July 15, 2009,

. The relevance of this information has already been explained.

The defense advises that it will call            to testify about the same and similar information. This testimony will include, but not be limited to,                                                                    testimony is relevant for the same reason as            .

(U) No. 69. The defense agrees to narrow this Item further. The defense will only seek testimony from the individuals interviewed in connection with the D-95 filing who told investigators that there may have been sources for the information other than Mr. Kiriakou. The defense will also seek to introduce the conclusions drawn by various agencies as to whether the information was classified or in the public record. The defense still intends to call Covert Officer A and Officer B as witnesses and question them regarding the perceived effects of their inclusion in the filing.

25

REDACTED / CLEARED FOR PUBLIC RELEASE

(U) **No. 70.** The information contained in this item is self-explanatory. If there is a public document, such as a magazine article, that publicly links Officer B to the RDI program, the defense may use that as evidence. The particular document is not necessary for the government to determine if such a link is classified. As to the contention that any public reporting after the June 22, 2008 article is irrelevant, the defense submits that the only relevance determination that needs to be made at this time is the fact that Officer B was publicly connected to the RDI program. To the extent that there were sources that linked Officer B to the RDI program other than Mr. Kiriakou, if Mr. Kiriakou knew about them, this knowledge would inform any belief that the information could harm the United States and whether or not the information was closely held.

(U) **VI. Discussions with Other Witnesses**

(U) Defense counsel is fully aware of its obligations under the protective order in this case as well as the non-disclosure agreements counsel has executed. These agreements, however, cannot be read to deprive Mr. Kiriakou of the right to defend himself. At the hearing on pretrial motions, defense counsel raised this problem of speaking with witnesses regarding classified information. The Court assured defense counsel that there were methods for dealing with them. Counsel respectfully submits that the time has come to address this issue.

**No. 71.** This item names five individuals whom the defense wishes to interview. It specifically tells the government that the defense will speak to these individuals about the Abu Zubaydah program, Officer B's connection to the RDI program, and

These are relevant inquires to the allegations in the indictment because, as explained, the information tends to negate elements of the charged crimes. As to the notion that defense counsel cannot speak with individuals who are not cleared regarding the indictment, the

26

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

defense is requesting guidance from the Court as to how to interview essential witnesses who are not currently in possession of a security clearance and a need to know.

(U) **No. 72.** The defense uses the deposition of John[          ]as an example of how people from outside the CIA were able to discover the names of Covert Officer A and Officer B. No other information is needed to make a classification determination. If an agency of the United States believes that there is a method by which a private individual can ferret out the identities of CIA officers, and that method is classified, the government is on notice the defense may elicit that information at trial. The information is relevant to demonstrate that other individuals would be able to determine the identities of Covert Officer A and Officer B without the aid of Mr. Kiriakou.

(U) As the government has already stated its intention to call John[      ]Mr.[      ]entire deposition, and all the information in it, is fertile ground for cross-examination. Unless the government intends to provide the defense with the questions it will ask of Mr.[      ]the defense cannot specify what information it plans on using in cross-examination.

No. 73. Contrary to the government's suggestion, the defense provided the information it plans on soliciting from Officer B: his connection[                    ]and his role in the Abu Zubaydah operation. His connection[

                                                          ]. The defense will seek testimony from Officer B regarding his role in the Abu Zubaydah and his interactions with Mr. Kiriakou. Officer B's role in the Abu Zubaydah operation will demonstrate that the government's contention that Mr. Kiriakou was the sole source of Journalist B's information is incorrect.

27

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

Nos. 74 & 75. These categories specify exactly the information about which a defense expert will testify. They will inform the jury how the United States government classifies and maintains classified information. They will inform the jury how an individual gets access to classified information and how classified information is shared between those entitled to have it, and those not entitled. Presumably the government will have to place this information into evidence to prove the 18 U.S.C. § 793 charges. In order to comply with CIPA the defense is placing the government on notice that it will present the jury its own version of how this process works, or challenge the government's version. In addition, the experts will be able to explain to the jury the lack of affirmative measures taken to conceal the identity of Covert Officer A or the connection of Officer B to the RDI program. For example, the defense experts will inform the jury how any person who read the

(U) The defense fully intends to comply with Federal Rule of Criminal Procedure 16(b)(1)(C).

## (U) CONCLUSION

(U) For the foregoing reasons, Mr. Kiriakou's CIPA Notice comports with the requirements of the statute. To the extent the Court has reservations as to the sufficiency of any noticed classified information, Mr. Kiriakou respectfully requests that, before barring use of any evidence, the Court hear arguments as to the relevancy of such information as a means of narrowing or focusing the classified information Mr. Kiriakou intends to disclose.

28

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

(U) Respectfully submitted,

/s/ Plato Cacheris

_____

Plato Cacheris
(Va. Bar No. 04603)
pcacheris@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ John F. Hundley

_____

John Francis Hundley
(Va. Bar No. 36166)
jhundley@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Robert P. Trout

_____

Robert P. Trout
(Va. Bar No. 13642)
rtrout@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Jesse I. Winograd

_____

Jesse I. Winograd
(Va. Bar No. 79778)
jwinograd@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

/s/ Mark J. MacDougall

_____

Mark J. MacDougall
(Admitted *Pro Hac Vice*)
mmacdougall@akingump.com
Attorney for John Kiriakou
AKIN GUMP STRAUSS
    HAUER & FELD, LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 887-4510
Fax:  (202) 887-4288

29

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

## (U)  Certificate of Service

(U) I hereby certify that on this 3rd day of October, 2012, I filed the foregoing reply, by hand, with the Classified Information Security Officer. Pursuant to the Protective Order, the Classified Information Security Officer will deliver the foregoing to the Court and to counsel for the United States:

Lisa L. Owings
Lisa.owings@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

W. Neil Hammerstrom, Jr.
Neil.hammerstrom@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

Ryan P. Fayhee
ryan.fayhee@usdoj.gov
U.S. Department of Justice
Trial Attorney
Counterespionage Section
600 E Street, N.W.
Washington, D.C. 20004

Iris Lan
Iris.lan@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

Mark E. Schneider
Mark.schneider@usdoj.gov
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

/s/ Jesse I. Winograd

Jesse I. Winograd
(Va. Bar No. 79778)
jwinograd@troutcacheris.com
Attorney for John Kiriakou
TROUT CACHERIS, PLLC
1350 Connecticut Ave, N.W., Suite 300
Washington, D.C. 20036
Phone: (202) 464-3300
Fax:  (202) 464-3319

31

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

EXHIBIT A TO REPLY TO
GOVERNMENT'S RESPONSE TO
DEFENDANT'S CIPA SECTION 5
NOTICE

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

## TROUT CACHERIS PLLC

ATTORNEYS AT LAW

ROBERT P. TROUT
(202) 464-3311
RTROUT@TROUTCACHERIS.COM

JESSE WINOGRAD
(202) 464-3307
JWINOGRAD@TROUTCACHERIS.COM

1350 CONNECTICUT AVENUE, N.W.
SUITE 300
WASHINGTON, D.C. 20036
(202) 464-3300

FAX (202) 464-3319

WWW.TROUTCACHERIS.COM

111 ORONOCO STREET
ALEXANDRIA, VIRGINIA 22314
(703) 519-8840

September 12, 2012

**By Hand Delivery via CISO**

Ryan P. Fayhee
Counterespionage Section
U.S. Department of Justice
600 E Street, N.W.
Washington, D.C. 20004

Re:     *United States v. Kiriakou*, Case No. 1:12-cr-00127-LMB

Dear Mr. Fayhee:

This letter supplements our letters to you dated May 25, 2012, August 3, 2012, August 17, 2012, and August 24, 2012 in which we requested production of exculpatory and impeachment material pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and related cases. Nothing in this request should be deemed to prejudice our rights to request further information as the case progresses, nor to absolve the government of its general obligations under *Brady*, Federal Rule of Criminal Procedure 16, and the discovery order entered in this case. In addition to our continuing request for all responsive material, we are requesting the following specific items:

- The names of any known or suspected websites, including any existing preserved screenshots of websites, that purport to identify CIA operatives, including covert officers and Chiefs of Station, including but not limited to those websites referred to in JK000021.

- All of John Kiriakou's performance awards and meritorious unit citations and any accompanying narratives, or reports supporting the awards and citations, not included in John Kiriakou's personnel file.

- All operational reporting regarding any and all operations involving John Kiriakou during his employment with the United States. Counsel specifically requests that the government act to clear counsel into the compartments necessary to hear details of these operations from their client.

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

# TROUT CACHERIS PLLC

Ryan P. Fayhee
September 12, 2012
Page 2

- The letter sent from Mark Mansfield of the CIA to Dean Baquet of *The New York Times* requesting that *The New York Times* not print ⬛⬛⬛⬛⬛⬛ name in the June 22, 2008 article "Inside the Interrogation of 9/11 Mastermind." The letter is referenced in CIA03968-03977.

- Any notes, memoranda, or other recordings of conversations between the CIA and any employee or contractor of *The New York Times* regarding the June 22, 2008 article "Inside the Interrogation of 9/11 Mastermind."

- Any memorandum, summary, notes or other recordings purporting to describe all or part of any conversations between John Kiriakou and the PRB and/or individual members of the PRB, including but not limited to any memorandum, summary, notes or other recordings of the conversations at the January 7, 2009 meeting of the PRB.

- The full unredacted names of ⬛⬛⬛ last name redacted) and ⬛⬛⬛ (last name redacted) referenced in CIA09655.

For each request, we ask that the government inform us whether: (1) the material exists and will be produced; (2) the material does not exist; or (3) the material exists, but the government does not believe that it is subject to disclosure.

In light of the current pre-trial schedule, we ask that you respond to this letter without delay.

Sincerely,

Robert P. Trout
Jesse Winograd

cc:     Mark E. Schneider (via CISO)
        Iris Lan (via CISO)
        Neil Hammerstrom, Jr. (via CISO)
        Christine Gunning (by hand)

lt_Fayhee091212_brady.doc

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

EXHIBIT B TO REPLY TO
GOVERNMENT'S RESPONSE TO
DEFENDANT'S CIPA SECTION 5
NOTICE

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE



**Akin Gump**
Strauss Hauer & Feld LLP

MARK MACDOUGALL
+1 202.887.4510/fax: +1 202.887.4288
mmacdougall@akingump.com

September 17, 2012

Ryan P. Fayhee
Trial Attorney
Counterespionage Section
U.S. Department of Justice
600 E Street, N.W.
Washington, D.C. 20004

Re:    *United States v. Kiriakou*, Case No. 1:12-cr-00127-LMB

Dear Mr. Fayhee:

This letter supplements our letters to you dated May 25, 2012, August 3, 2012, August 17, and August 24, 2012, as well as the several supplemental requests communicated by electronic mail, in which we requested production of exculpatory and impeachment material pursuant to Federal Rule of Criminal Procedure 16, *Brady v. Maryland*, 373 U.S. 83 (1963) and related cases. Nothing in this request should be deemed to prejudice our rights to request further information as the case progresses, nor to absolve the government of its general obligations under *Brady*, Federal Rule of Criminal Procedure 16, and the discovery order entered in this case. In addition to our continuing request for all responsive material, we are requesting the following specific items:

- All cables, letters, other communications and related documents, issued by any U.S. intelligence or diplomatic official or agent, disclosing or declaring the status of Covert Officer A (as identified in the indictment in this case) to any foreign government, agency, official or agent. This request specifically includes, without limitation (a) disclosures and declarations made to any of the national governments or any agencies, agents or officials of the national governments listed in Exhibit 1 to this letter, and (b) any and all *declaration of status* cables or other communications, relating to Covert Officer A, issued by a CIA Chief of Station to CIA Headquarters.

- All cables, letters, memoranda, electronic communications and other correspondence and documents relating to any notice issued by the International Criminal Police Organization (INTERPOL) which refer, directly or indirectly, to Covert Officer A by any name or pseudonym, including without limitation any

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE



**Akin Gump**
Strauss Hauer & Feld LLP

Ryan P. Fayhee
September 17, 2012
Page 2

correspondence issued or received by the U.S. Department of Justice as the National Central Bureau of INTERPOL for the United States.

For each request, we ask that the government inform us whether: (1) the material exists and will be produced; (2) the material does not exist; or (3) the material exists, but the government does not believe that it is subject to disclosure.

In light of the current pre-trial schedule, we ask that you respond to this letter without delay.

Sincerely,

Mark MacDougall

cc:   Robert P. Trout (by E-Mail: rtrout@troutcacheris.com)
      John F. Hundley (by E-Mail: jhundley@troutcacheris.com)
      Jesse Winograd (by E-Mail: jwinograd@troutcacheris.com)
      Mark E. Schneider (by E-Mail: mark.schneider@usdoj.gov)
      Iris Lan (by E-Mail: iris.lan@usdoj.gov)
      Christine Gunning (by E-Mail: christine.e.gunning@usdoj.gov)

REDACTED / CLEARED FOR PUBLIC RELEASE

REDACTED / CLEARED FOR PUBLIC RELEASE

**Akin Gump**
Strauss Hauer & Feld LLP

Ryan P. Fayhee
September 17, 2012
Page 3

EXHIBIT 1

REDACTED / CLEARED FOR PUBLIC RELEASE